WARD v. DAMPSKIBSSELSKABET KJOEBENHAVN.

(District Court, E. D. Pennsylvania. April 18, 1906.)

1. DEATH—ACTIONS FOR CAUSING DEATH—MEASURE OF DAMAGES.

The measure of damages recoverable for wrongful death is the pecuniary loss suffered by the persons entitled to the benefit of the earnings of the deceased, and that loss is what he probably would have earned during the remainder of his lifetime by his intellectual or bodily labor in his business or profession which would have gone for their benefit, taking into consideration his age, ability, and disposition to labor and his habits of living and expenditure.

[Ed. Note.—For cases in point, see vol. 15, Cent. Dig. Death, §§ 103–119.]

2. SAME—EVIDENCE—MORTALITY TABLES.

In an action for wrongful death, the Carlisle Mortality Tables or other similar tables are admissible on the question of the expectancy of life of the deceased, when the precedent proof has brought him within the class of selected lives tabulated, although they are not conclusive.

[Ed. Note.—For cases in point, see vol. 15, Cent. Dig. Death, § 84; vol. 20, Cent. Dig. Evidence, § 1520.]

3. SAME—AMOUNT OF COMPENSATION—EVIDENCE CONSIDERED.

An award of $25,000 made to libelant on behalf of herself and children as damages for the death through the negligence of defendant of her husband, who was a physician, 39 years old, industrious, of good health and habits, and high standing in his profession, and who was at the time of his death assistant quarantine physician, receiving a salary and perquisites amounting to $3.000 per year; his personal expenditures being estimated at $1,000 per year.

[Ed. Note.—For cases in point, see vol. 15, Cent. Dig. Death, §§ 120, 125–130.]

In Admiralty. On exceptions to report of commissioner.

See 136 Fed. 502.

The following is, in substance, the report of Henry P. Brown, commissioner:

It was shown to your commissioner by competent and respectable testimony that Dr. John M. B. Ward, the deceased, had been for 8 years prior to his death assistant quarantine physician at Marcus Hook, on the Dela-

ware river. He had been a physician for 12 years and was then 39 years of age. Prior to his appointment as assistant quarantine physician he had been a practicing physician in the city of Chester, Pa., being a graduate of Jefferson Medical College. He was selected as assistant quarantine physician for his competency. He was regarded as a bright, rising young physician. He had been sought after by the managers of the Chester Hospital and elected on the staff, on which he served with great credit, devoting his time to bacteriology, and when he was appointed assistant quarantine physician the hospital officials regretted that they were to part with him. In the position as assistant quarantine physician he pursued the study of bacteriology and sanitary science, and gave standing and credit to the position that he held. He was interested in his profession, and was studious and ambitious. He developed the facilities of the quarantine station, establishing the sterilizing branch and was the promoter of the floating sterilizing apparatus that was employed there. He enjoyed excellent health and was of good habits, robust, active, vigorous, and well liked socially and professionally. He was a member of the county, state, and American medical associations. He was devoted to his family, and discharged his duties to them with fidelity. He was in receipt of an annual salary, in cash, of $2,000. He was also furnished, free of charge, a house in which he and his family resided; a male servant, horse and carriage, coal, light, ice, vegetables, and household supplies, such as starch, soap, and brooms. In the opinion of your commissioner a conservative estimate of the value of these perquisites and advantages would be $1,000 per year. It was estimated that the personal expenses of the deceased would probably amount to $1,000 per year, leaving $2,000 as the yearly sum that the widow and children were deprived of by his death. He expended all of his income and was not possessed of any other means. His life was insured for $5,000 in favor of his widow, which was collected by her.

In Louisville & St. Louis Railroad v. Clarke, 152 U. S. 230–242, 14 Sup. Ct. 579, 582, 38 L. Ed. 422, it was held that "the age of the deceased, his probable expectancy of life, his occupation, his ability to labor, his accustomed earnings, were all proper elements of the inquiry as to the compensation proper to be awarded on account of his death." The Supreme Court of Pennsylvania has held substantially the same. In Mansfield Coal & Coke Co. v. McEnery, 91 Pa. 185–189, 36 Am. Rep. 662, Mr. Justice Paxson, said: "I know of no more accurate rule for the measure of damages than the one laid down by the present chief justice in Pennsylvania Railroad Co. v. Butler, 57 Pa. 335: 'After an attentive examination and review of all the cases which have heretofore been decided, we are of opinion that the proper measure of damages is the pecuniary loss suffered by the parties entitled to the sum to be recovered without any solatium for distress of mind, and that loss is what the deceased would have probably earned by his intellectual or bodily labor in his business or profession during the residue of his lifetime, and which would have gone for the benefit of his children, taking into consideration his age, ability, and disposition to labor, and his habits of living and expenditure.'"

It having been shown that the deceased was 39 years of age at the time of his death, of robust health, and of good habits, what was his probable expectancy of life? Under these circumstances, according to the Carlisle Tables it was 28 28-100; according to Dr. Wigglesworth's Table of Mortality, 26 47-100; according to Equitable Tables, 26 26-100; according to Northampton Tables 23 60-100; as stated in Scribner on Dower, beginning at page 811. While these tables are not conclusive, they are entitled to weight, when precedent proof has brought the deceased clearly within the class of selected lives tabulated. Kerrigan v. Pennsylvania Railroad Co., 194 Pa. 98, 44 Atl. 1069; Emery v. Philadelphia, 208 Pa. 492, 57 Atl. 977; Iseminger v. York Haven, W. & P. Co., 209 Pa. 615, 59 Atl. 64. In Emery v. Philadelphia, supra, Mr. Chief Justice Mitchell (at page 499 of 208 Pa., page 979 of 57 Atl.) said: "The only remaining question relates to the admission of the Carlisle Mortality Tables as evidence of the expectation of life of plaintiff's husband. Those Tables have been held admissible, and that question is not now open. Steinbrunner v. Pittsburg, etc., Ry. Co., 146 Pa. 504, 23 Atl. 239, 28 Am. St.

Rep. 806; Campbell v. York, 172 Pa. 205, 33 Atl. 879; Kerrigan v. Pennsylvania R. R. Co., 194 Pa. 98. 44 Atl. 1069. They are not conclusive, and are far from satisfactory evidence, but are admitted from necessity because they are the best guide attainable to the establishment of a material, but necessarily uncertain, fact, the natural duration of the individual life which has been terminated by the injury in controversy. Uncertain and unsatisfactory as any test drawn from the general duration of life must be when applied to an individual case, it is better than the uninstructed guess of a jury. But the restrictions under which such testimony should be received and the cautions with which it should be submitted to the jury are clearly and authoritatively set forth by our Brother Dean in Kerrigan v. R. R. Co., supra, and see, also, McKenna v. Citizens' Nat. Gas Co., 198 Pa. 31, 47 Atl. 990."

What is reasonable and proper compensation to be awarded, on account of the death of the deceased, under the facts as shown in this case, is somewhat difficult to determine. Some guide is furnished by the annuity tables, and by cases of a somewhat similar nature which have been passed on by the court. An annuity of $2,000 per year to a person of the age of the deceased, and of his health and habits, would cost to purchase $34,360 in one of the largest life insurance and annuity companies in New York, and $34,128 in one of the largest companies in Philadelphia.

No cases have been called to the attention of the commissioner, nor has his search disclosed any, in which the amount of compensation for the death of a physician under similar circumstances was determined. Many cases have been cited in which those who were killed were engaged in other occupations, and the amounts awarded have varied. In Lane v. Brooklyn Heights R. R. Co.. 85 App. Div. 85, 82 N. Y. Supp. 1057, affirmed in 178 N. Y. 623, 70 N. E. 1101, the deceased held a life position as battalion chief in the fire department at an annual salary of $3.300. He was 38 years old and left a widow and two children. A verdict for $25.000 was sustained. In International & G. N. R. Co. v. McVey et al. (Tex. Civ. App.) 81 S. W. 991, the deceased was a section foreman, in receipt of $50 per month. His age is not reported, but his expectancy of life was 19 or 20 years. He left a widow and children. A verdict of $20,000 was sustained. In Gulf, C. & S. F. Ry. Co. v. Boyce (Tex. Civ. App.) 87 S. W. 395, the deceased was 45 years old. He was an engineer employed by the defendant company, and earned from $150 to $200 per month. A wife, daughter, and mother survived him. A verdict of $17.500 was sustained. In Coolidge v. City of New York (Sup.) 90 N. Y. Supp. 1078, the deceased was 37 years old. His occupation was not stated, and there was no definite evidence of his earnings. His wife testified that she received from $20 to $25 per week for herself and four children. A verdict for $22.000 was reduced to $15,000. In Missouri, K. & T. Ry. Co. v. Nelson (Tex. Civ. App.) 87 S. W. 706, the verdict was for $16.000. The deceased was 33 years old. and earned about $96.75 per month as an engineer employed by the defendant company. He was capable of earning $125 per month. He left a widow and four children. In Hoffman v. New York Central & H. R. R. Co. (Sup.) 87 N. Y. Supp. 617, deceased was 38 years old and employed as a driver of a brewery wagon. He earned about $720 per year. He left a widow and three children. A verdict of $18,000 was reduced to $12,000. In Stevens v. Union Railway Co., 75 App. Div. 602, 78 N. Y. Supp. 624, affirmed as modified in 176 N. Y. 607, 68 N. E. 1125, deceased was 35 years old and drove a milk wagon. He left a widow and two daughters. His salary was $12 per week. A verdict for $15,000 was reduced to $10,000. In The Oceanic (D. C.) 61 Fed. 338, deceased was 32 years of age and in the dairy business. He left a widow and three children. He received from $1,500 to $2,100 per year. The award was $10,000. In Voelker v. Chicago, M. & St. P. Ry. Co. (C. C.) 116 Fed. 867, deceased was 29 years old and was a switchman. He earned $900 per year. The award was $9,000. In Re Humboldt Lumber Mfs. Ass'n (D. C.) 60 Fed. 428, the master of the schooner was drowned. He was 35 years of age and received $100 per month. He left a widow and two children. The court awarded them $7,000. The cook was also drowned.

He was 39 years of age and received $50 per month. He left a widow and three children. The award was $5,000. In Harkins v. Pullman Palace Car Co. (C. C.) 52 Fed. 724. the deceased was an ordinary laborer earning about $400 per year and was 30 years of age. The verdict was for $7,000 and was sustained by his honor Judge Wales, in which his honor Judge Dallas concurred.

In this case it was contended on behalf of the defendant that the plaintiff would be fully compensated by the payment of a sum which would yield an annual interest equal to the one-half of the deceased's yearly income at the time of his death, and that a person of his age, all other conditions being favorable, could purchase an annuity of $200 by the payment of $2,630, and it was argued for the defendant that this should be the maximum damages to be allowed. Judge Wales said that this basis of calculation was, however, much too narrow, and that, in answering the question of what was the life of her husband worth to the plaintiff in a pecuniary point of view, the jury were not necessarily confined to a calculation of the husband's wage-earning capacity only, and that the life of an honest, industrious, and kindhearted husband and father, exclusive of mere affection and sentiment. has for his wife a money value, in addition to what he may be earning by his personal labor or business. It is reasonable to assume that the deceased, had he lived, would have continued his successful career as a physician, and that, had he resumed private practice, his income would have been equal to his salary and perquisites at the time of his decease; and that it would have steadily increased.

Upon the foregoing facts, and taking into consideration all of the circumstances of the case, your commissioner is of opinion that the sum of $25,000 is the damages sustained by the libelant, and so respectfully reports to the said court. The commissioner has filed with his report the testimony taken before him.

At the request of counsel for the respondents, the commissioner reports that in arriving at the amount of damages sustained by the libelant credit was not given by the commissioner for the $5,000 life insurance collected by her, nor for the amount of any estate of which the deceased was possessed at the time of his death.

Frank R. Savidge and Alfred Driver, for libelant.

Charles R. Hickox and Henry R. Edmunds, for respondent.

HOLLAND, District Judge. The findings of fact by the commissioner in this case are amply sustained by the evidence, and his legal conclusions are supported by the numerous authorities cited.

The report is affirmed for the reasons therein stated.