### MATHER et al. v. CLYDE S. S. CO.

Circuit Court of Appeals, Second Circuit. January 6, 1930.

No. 119.

Barry, Wainwright, Thacher & Symmers, of New York City (Herbert Barry and John C. Crawley, both of New York City, of counsel), for appellants.

Evan Shelby, of New York City (John E. Walker, of New York City, of counsel), for appellee.

Before MANTON, AUGUSTUS N. HAND, and CHASE, Circuit Judges.

CHASE, Circuit Judge (after stating the facts as above). ▮ In dealing with the motion to dismiss, we shall look only to the complaint, accepting its allegations as true, Felt v. Germania Life Ins. Co., 149 App. Div. 14, 133 N. Y. S. 519, as there has been no admission by the plaintiffs of any part of the answer, and, without such admission, under the New York Civil Practice Act, § 243, allegations of new matter in the answer are "deemed controverted by the adverse party, by traverse or avoidance, as the case requires." Accordingly, the motion to dismiss can have no aid from the answer in its attack upon the complaint. Town of Potsdam v. Aetna Casualty & Surety Co., 218 App. Div. 27, 217 N. Y. S. 641.

▮ We shall, of course, take judicial notice of the Proclamation of the President and of the laws of the United States. Assuming, then, that the Inca was at all the times mentioned under government operation and control, the defendant from whom she had been requisitioned had at least a reversionary interest in the vessel. Standard Oil Company v. Southern Pacific Company, 268 U. S. 146, 45 S. Ct. 465, 69 L. Ed. 890. If she had been lost, the loss, to be measured by her then market value, would have been the owner's in the first instance, The Cushing (C. C. A.) 292 F. 560–566, subject to diminution or extinguishment, to be sure, by the

enforcement of whatever right to compensation the owner may have had.

 When the vessel was unladen at New York, the cargo owner claimed the right to security for the payment of whatever the ship should be found liable to contribute toward the loss occasioned by the stranding, and consented not to libel or detain her in consideration of the execution by the defendant of the general average bond. Whether the cargo owner had an enforceable lien on the vessel or not may have been doubtful at the time, and, in the light of later interpretative decision, we may now believe that the Federal Control Act (40 Stat. at L. 451, 456), providing in section 10 that "no process, mesne or final, shall be levied against any property under such Federal control," would have made fruitless an attempted arrest of the vessel. The Western Maid, 257 U. S. 419, 42 S. Ct. 159, 66 L. Ed. 299; Missouri Pacific Railroad Company v. Ault, 256 U. S. 554, 41 S. Ct. 593, 65 L. Ed. 1087. But certainly the rights of the parties were not so well settled at that time and the cargo owner would have been justified when the bond was given in taking action to determine its right to have the security of the vessel for the payment of its claim. With the cargo owner making such a claim to security, the defendant, by assuming the obligation of its bond, freed the vessel from danger of arrest and detention.

We do not, in reviewing the action taken on the motion to dismiss the complaint, go further than to assure ourselves that the defendant had a sufficient interest in the vessel to have had an incentive to execute the bond as principal, as the document itself would indicate it did, rather than as the agent for the Director General, as the defendant now claims. Such an interest to protect is enough in the present state of this case to negative the bare claim of the defendant that the bond must be construed, despite its express terms, to have been executed by it only as such agent. We do not know what authority the defendant had to execute a bond as agent for the Director General, and for the purposes of this appeal the allegations of the complaint, which are to the effect that the defendant acted as principal, must control. The defendant, notwithstanding the Proclamation of the President and the acts of Congress under which its vessel was requisitioned, still was in existence as a corporate entity with power to act for itself, if it saw fit, in matters not exclusively within the control of the Director General. Postal Telegraph-Cable Co. v. Call (C. C. A.) 255 F. 850; Hines v. Dahn (C. C. A.) 267 F. 105.

Judgment reversed.