**JONES v. ATLANTIC REFINING CO.**

No. 3309.

District Court, E. D. Pennsylvania.

April 28, 1944.

18

Freedman & Goldstein and Abraham E. Freedman, all of Philadelphia, Pa., for plaintiff.

Lewis, Wolff & Gourlay, Otto Wolff, Jr., and Howard H. Yocum, all of Philadelphia, Pa., for defendant.

WYCHE, District Judge (sitting by designation).

Plaintiff, an American seaman, instituted this suit, under the Jones Act, 38 Stat. 1185, 41 Stat. 1007, 46 U.S.C.A. § 688, to recover damages for certain personal injuries which he sustained in the course of his employment.

He was a member of the crew, as an oiler, on the defendant's steamship "E. H. Blum" which departed from Philadelphia southbound on February 15, 1942, under wartime regulations. The following day the vessel encountered heavy fog and in accordance with routing instructions headed for the Chesapeake Bay with the intention of anchoring overnight inside the Bay. The vessel arrived at the junction buoy between 6:30 p.m. and 7 p.m., which was about four to five miles east of Cape Henry, where it was required that all vessels must be identified by a naval patrol boat and obtain a pilot before proceeding into the harbor. All mariners had been warned that the entrance to Chesapeake Bay had been mined as a wartime measure. After arrival at the junction buoy the vessel headed toward the entrance to the Bay and thereafter, shortly after 8:30 p.m. (Standard Time) the vessel came into contact with submerged mines which caused three explosions about fifteen or twenty minutes apart.

The evidence discloses that after the first explosion, plaintiff took his assigned position at the lifeboat and stood by for further orders; when it appeared that the vessel might be saved, he returned below into the engine room, but the second explosion caused the ship to list and founder and the Captain gave the order to abandon ship; that he then ascended to the deck and proceeded to the position to which he had been assigned; that his regular position was

in the boat and it was his duty when it was being lowered to fend it off the side of the vessel with an oar; that instead of permitting him to take his regularly assigned position in the boat, the mate instructed him to remain on deck and help lower the boat; that this job was customarily performed by able seamen who were trained for the particular work; and that after the boat was lowered into the water, he then started to descend the lifeline and because it was not held taut below, he swung back and forth against the side of the ship, as a result of which he lost his grip on the lifeline and plunged about forty feet into the lifeboat below.

Most serious of plaintiff's injuries were multiple fractures of his left leg and ankle, sprain of the right ankle and lower back muscles. He was picked up shortly thereafter by a Coast Guard patrol boat and taken the following day to the United States Marine Hospital in Norfolk, Virginia, where, among other things, on February 18th a closed reduction and application of cast were performed to the fractures of the left tibia and fibula. He remained in the hospital until March 20, 1942, when he was permitted to return home to Philadelphia with his leg in a cast. He returned twice to this hospital for further treatment and change of the cast, and thereafter was treated by the defendant's physician for a period of about one year.

Plaintiff applied to the defendant for reemployment in May of 1943, and after further examination by the defendant's physician, Dr. Bates, was told not to do any climbing, or work on uneven surfaces nor should he be on his feet any more than was necessary. He was put to work as a storeroom helper but when his leg swelled in a short time, he asked for a sedentary job so that he could keep off his feet. He was told to return in three days, so that his request could be taken under consideration. When he returned, he was advised that it was a "tough break" but that they had nothing for him that he could do. Plaintiff has since been under medical care of Dr. Walkling.

There is no dispute in the medical testimony. Plaintiff will never be able to return to sea, nor will he be able to engage in any occupation which will require walking or standing on this leg for any length of time. The medical testimony shows that the only kind of work which he can perform regularly is sedentary in nature.

At the time of the accident, plaintiff was twenty-seven years of age. He first started going to sea in 1931, when he was sixteen years of age, and since then, when not going to sea, has held jobs as a track-walker and welder. At the time of the accident, he was earning $116.50 per month plus "found", war bonus and overtime.

Upon interrogatories submitted, the jury found, (1) that the explosions occurred within a mined area at the entrance to Chesapeake Bay; (2) that the "Blum" failed to blow a proper signal for a pilot; (3) that the defendant was negligent in the manner in which the "Blum" was navigated; (4) that the defendant was negligent (a) in ordering plaintiff to assist lowering the lifeboat, and (b) in failing to secure the lifeline below while plaintiff was descending into the lifeboat; (5) a verdict for the plaintiff in the total sum of $25,000, itemized as follows: for pain and suffering $1,000; for loss of wages from the date of the accident to the time of trial $5,600; and for loss of future earning power the sum of $18,400; (6) and that the answers to the interrogatories were not based upon speculation.

Defendant now moves the court to set aside the jury's verdict, and for a new trial upon the ground, among others, that the verdict is excessive.

Courts have, and sometimes exercise, the power to set aside verdicts on the ground of excessiveness, yet it is a power to be cautiously used. Brown v. Evans, C. C., 17 F. 912, affirmed Evans v. Brown, 109 U.S. 180, 3 S.Ct. 83, 27 L.Ed. 898. Courts in general are most reluctant to disturb a jury's verdict on the ground of excessiveness where the damages are unliquidated and there is no fixed measure of mathematical certainty. This is particularly significant with respect to damages in tort actions for personal injuries. Armit v. Loveland, 3 Cir., 115 F.2d 308, 314. The texts and the authorities are consistent in holding that a verdict of the jury will not be set aside as excessive unless it be clearly shown that the jury either disregarded the instructions of the court or was influenced by passion, prejudice or corruption, or other improper motives. "Of the various formulae that have been allowed by the courts for the determination of the question whether a

verdict is excessive, the following one, employed by Chancellor Kent, in a libel case, has been frequently quoted or paraphrased with approval in passing upon objections to verdicts as being excessive: 'The damages, therefore, must be so excessive as to strike mankind, at first blush, as being, beyond all measure, unreasonable, and outrageous, and such as manifestly show the jury to have been actuated by passion, partiality, prejudice, or corruption. In short, the damages must be flagrantly outrageous and extravagant, or the court cannot undertake to draw the line; for they have no standard by which to ascertain the excess.' The formula which is perhaps most frequently used is to the effect that to warrant interference the verdict must be so excessive as to appear to have been given under the influence of passion or prejudice." 15 Am.Jur. 623. A verdict should not be set aside simply because it is excessive, in the mind of the court, but only when it is so grossly excessive as to shock the court's sense of justice, and the impropriety of allowing it to stand is manifest. Boyle v. Ward, D.C.Pa. 39 F.Supp. 545; Malone v. Montgomery Ward & Co., D.C.Miss., 38 F.Supp. 369; Peltomaa v. Katahdin Pulp & Paper Co., C. C., 149 F. 282. When there is any margin for a reasonable difference of opinion in the matter, the view of the court should yield to the verdict of the jury, rather than the contrary. Smith v. Pittsburgh & W. R. Co., C. C., 90 F. 783. The court must respect the verdict of the jury in fact as well as in pretense or theory and must not interfere or substitute its own judgment for that of the jurors, for to do so would violate a constitutional privilege to have the fair verdict of the jury and not the fair judgment of the court. However, it may be expressed by a court, summarized, the rule is that, the trial judge will not interfere with a jury's verdict simply because it is greater than his own estimate; only where the verdict is so grossly excessive as to shock the conscience of the court and clearly manifest that it was the result of caprice, passion, partiality, prejudice, corruption, or other improper motives, will the court intervene; and the theory always is that a court will not set aside a verdict on this ground in an action of this character except in extreme and exceptional cases. Brown v. Evans, supra.

Guided by the foregoing well-settled principles of law, applied to the facts of this case, I have concluded to let the verdict of the jury stand, although if I had tried the case without a jury, I would have given judgment for the plaintiff in a lesser amount for loss of future earning power.

■ The award for pain and suffering in the sum of $1,000 is quite conservative under the circumstances of this case. Cf. Carroll v. United States, 2 Cir., 133 F.2d 690. The record shows that plaintiff endured considerable suffering not only at the time of the accident, but at the time of trial, more than two years later, his leg and ankle were still swollen and not free from pain. The amount of this award furnishes some evidence that the jury was not influenced by unlawful or improper motives. The defendant agrees that this award is reasonable, but argues that the award for past losses in the amount of $5,600, and the award for $18,400 for loss of future earnings, are excessive and not sustained by the evidence.

■ As to the award for $5,600, defendant contends that in calculating past losses only the basic wage should be considered, to the exclusion of the value of the "found" and war bonus. Plaintiff does not claim the value of "found" in this element of damage, but does claim the war bonus. I am satisfied that the jury's verdict did not include "found" but did include war bonus. It is conceded that the basic salary was $116.50 per month, and it is also admitted in the defendant's answer that the plaintiff was entitled to war bonus in accordance with the decisions of the United States Maritime War Emergency Board. This Board was created by a proclamation of the President of the United States to provide for a uniform system of war bonus and war risk insurance to govern all vessels documented under the laws of the United States. The court may take judicial notice of Presidential proclamations as well as Federal regulations and statutes. Caha v. United States, 152 U.S. 211, 14 S.Ct. 513, 38 L.Ed. 415; Mather v. Clyde S. S. Co., 2 Cir., 37 F.2d 49. The plaintiff testified that he was informed by his superior officer that the crew were to be paid 100% war bonus. The defendant objected to this testimony on the ground that the best evidence was the written records showing what the members of the crew were paid. Plaintiff called for the production of the written records which were in the defendant's possession.

The court permitted the plaintiff's testimony, with the understanding that defendant would have ample opportunity to look into its records and produce them to contradict the plaintiff's testimony. Defendant informed the court that the records were at Fort Mifflin Terminal, which I understand is only a fifteen minute ride from the Court House where the trial was being held. The trial concluded some two and one half days later during which time the defendant neither produced the records, nor offered any explanation, nor any evidence to contradict the plaintiff's testimony upon this question. If plaintiff's understanding of the bonus agreement were incorrect, defendant should have produced testimony to contradict his testimony upon this question; failure to produce it made the secondary evidence competent. It may be observed here that, the law has ceased to be a scientific game that may be won or lost by playing some particular move. The court in the case of Miller & Pardee v. Lawrence A. Sweet Mfg. Co., D.C., 3 F.2d 198, 199, pointedly observed, "The day is no longer here when the courtroom will furnish the arena for an exhibition of purely strategic moves on the legal chessboard. * * * The whole effort of the court, with the assistance of counsel and witnesses, must be to ascertain the truth as to such issues alone."

It is urged that plaintiff's contract would have expired shortly after the disaster and he, therefore, would not be entitled to bonus. This suit is not based on contract, but on tort, and the jury was justified, under the evidence, in finding that plaintiff would have been employed on defendant's vessels, or other vessels, under existing conditions, which call for war bonus as well as basic salary. Under the circumstances, the jury was justified in finding that plaintiff was entitled to 100% bonus in addition to his basic salary. Under the rulings of the Board, the war bonus ceases during the time the vessel is in an American port. Plaintiff testified that the vessel was at sea about twenty-seven days out of each month. It, therefore, becomes a matter of calculation to determine whether the jury made a proper finding for past losses. The time covering past earnings extended for a period of twenty-five months and nine days. The basic wage of $116.50 per month multiplied by 25.3 months equals $2,947.45. The bonus for a twenty-seven day month figures to $104.-

841, which, multiplied by 25.3 months amounts to $2,652.48. The total of basic pay, added to the bonus pay totals $5,599.93. The jury's award of $5,600.00 for this item is substantially sustained by the evidence.

The final phase of the jury's verdict involves loss of future earning power. This element requires a consideration of all matters which relate to the nature of the disability. The effect which that disability will have on plaintiff's capacity to work, the extent to which the disability will impair the plaintiff's earning capacity, and the present value of all losses due to his impaired earning power.

There is practically no dispute in the record concerning the nature and extent of plaintiff's injuries and physical disability. The evidence discloses that there were multiple fractures of the leg and ankle and a large piece of bone was broken off; that because the fractures penetrated the ankle joint, there is not only limited motion, weakness, swelling and pain, but the foot and ankle have healed in such a position that the ankle and foot are turned outward instead of being in a straight line with the leg; there is considerable amount of deformity of the large bone at the ankle joint, it is weakened and spread out as a result of the crushing; that the cartilage in the joints which normally allows the bones to move smoothly over one another has been destroyed, adding to the disability and pain; that the lymph, which is the circulating white blood, has become separated from the red and blue blood; that the lymph channels, due to the fractures and injuries to the soft tissues, have been interfered with, and there are not sufficient channels for the lymph to get back; that the result is that if he were to stand for long periods of time, even without motion, the swelling would be aggravated; that it would appear that he will never be able to do any substantial walking or standing on the injured leg and foot without some form of support, such as a cane; that he will not be able to perform any labor or work which requires use of the injured member; and that this is a permanent condition. It was the jury's function to determine from this evidence the extent that plaintiff's future earning capacity has been impaired.

There are no fixed rules which would compel a definite percentage of disability. Dr. Bates, a witness for the de-

fendant, testified that he would not undertake to say what it was in this case. There are a great many factors to be considered which make it virtually impossible to apply the same percentage to any two given cases. Each case must be determined upon its own set of facts, taking into consideration the particular individual's intelligence, education, temperament and other personal qualities which may have any bearing on his ability to rehabilitate himself to some other form of employment or adapt himself to some other skill. The supply and demand for manpower will vary and have a bearing on future employment. The depreciation of money at the present time and the fact that it has a purchasing power much less than in former years, is an element to be considered. All these and other matters may be considered in evaluating a man's future losses. It is the jury's function to determine, in the exercise of its sound judgment, and from its common experience, how much a man's earning capacity will suffer.

▌ In determining whether a verdict is excessive it must be remembered that the maximum amount which a jury might properly award as damages under the evidence in a personal injury case cannot be determined with any degree of certainty, and must be largely a matter of judgment; the view most favorable to the plaintiff must be inferred from the evidence, and if there is substantial evidence to sustain the verdict it will not be disturbed. Verdicts in other cases of similar character are not controlling. Facts in each case differ so much that no criterion can be established, however, it has been said that there is an increasing tendency among the courts in later years to sustain verdicts for much larger amounts than formerly. 15 Am.Jur. 626. In the instant case, the defendant urges that the plaintiff is entitled to a maximum of one-third percentage of disability. Plaintiff suggests that under the evidence, plaintiff could be entitled to one-half to three-fourths disability. It is not the function of this court to make an independent finding as to what percentage of disability the plaintiff may have. It is rather my duty to determine from the evidence the maximum allowance which the jury could have found from the evidence. The jury could find under the evidence that plaintiff will be permanently disabled from performing any substantial work which re-

quires the use of his leg. The evidence shows that from the time he was sixteen years of age, he has been engaged in mechanical and manual labor. Besides going to sea, he has held jobs as a welder and as a track-walker. Plaintiff could, of course, engage in sedentary work, but it does not appear what type of sedentary work he could perform. He applied for re-employment to the defendant and was put to work as a storekeeper's helper. When his foot swelled and interfered with his performance of this job, he asked to be transferred to some sedentary job. The defendant took his request under consideration for three days and then advised him that they had no such work for him. It would appear from this that there is only a limited kind of sedentary work available to him. The jury could have found a substantial impairment in his earning capacity.

▌ In considering plaintiff's earning capacity, defendant contends that it should be limited to the basic wage of $116.50 per month, and the value of the "found" should not be included, because the record does not show that he received any "found". This contention is without merit since the defendant admits in its answer its obligation to provide "found". Moreover, Congress has made it mandatory on the shipowner not only to provide "found" but requires the shipowner to provide a certain minimum scale of provisions. 46 U.S.C.A. § 713. This scale of provisions is incorporated into the shipping articles, which are in evidence. The value of this "found" is, of course, for the jury's judgment.

▌ In arriving at a verdict, which represents the present value of any future losses the jury is at liberty to arrive at an amount based upon their knowledge and experience of human affairs. They are, however, entitled, but not required to use certain standards in aid of their deliberations such as life and annuity tables. Vicksburg & M. R. Co. v. Putnam, 118 U.S. 545, 7 S.Ct. 1, 30 L.Ed. 257; Coast S. S. Co. v. Brady, 5 Cir., 8 F.2d 16. In Dunton v. Hines, D.C., 267 F. 452, the District Court referred to the case of O'Brien v. J. G. White & Co., 105 Me. 308, 316, 74 A. 721, 724, wherein Judge King, in speaking for the Maine Court, held that where the amount awarded would purchase for the plaintiff an annuity in

excess of the plaintiff's total yearly earnings, the amount of the verdict should be held to be excessive, and wherein it was further held that the amount to be awarded the plaintiff for the diminution in his future earnings should be a sum equal to the present worth of such diminution for his expectancy of life. In Ward v. Dampskibsselskabet Kjoebenhavn, D.C., 144 F. 524, the District Court for the Eastern District of Pennsylvania, considered the annuity tables of two large insurance companies in determining the present value of future losses. I find that a deposit of $18,400 will purchase, today, from The Union Central Life Insurance Company for a male person, age 29, an annuity on the "refund plan" of $53.72 per month, or $656.88 per year, for the remainder of his life, any balance of the original deposit at his death to go to his beneficiaries in the same installments. A deposit of $18,400 will purchase, today, from the same company, for the same person, an annuity on the "without refund plan" of $55.75 per month, or $681.35 per year, for the remainder of his life, payment of installments ceasing upon his death without refund of any unpaid balance of the original deposit.[1] The verdict, therefore, represents, on the first plan, the present value of monthly payments of $53.72, or of yearly payments of $656.88, and on the second plan, represents the present value of monthly payments of $55.75 or yearly payments of $681.35. Considering the plaintiff's earning capacity of $116.50 per month, and $1.20 per day for board and lodging (as suggested by defendant's counsel), or $1,836.00 per year, the above annuities would represent a little more than 33⅓% disability. If the allowance for board and lodging per month is increased (as suggested by plaintiff's counsel) the percentage of disability would be decreased accordingly. I do not know what basis was used by the jury in arriving at its verdict in this case, nor can I, under our system of jurisprudence, discover what it was. If it can be sustained under the testimony and the law upon any proper basis it is my duty to let it stand.

I realize that the decision of a motion for a new trial upon the ground that the verdict of the jury is excessive involves the exercise of a discretion that is not only delicate but difficult, and for this reason, I have given unusual thought and study to the decision of this motion, and I am filing this written opinion in order to recite the considerations that have guided me in the exercise of a discretion imposed by law upon the court in dealing with a verdict that seems excessive, and yet which I cannot, under the principles of law, by which I must be controlled, disturb. The damages in this case resulted from personal injuries, are unliquidated and there is no fixed measure, of mathematical certainty, for such damages.

Under such circumstances, I must be reluctant to disturb the jury's verdict on the ground of excessiveness. Armit v. Loveland, supra. A trial judge is not required as a matter of law to grant a new trial merely because his finding would have been different from the verdict of the jury. Beaudrot v. Southern R. Co., 69 S.C. 160, 48 S.E. 106[2]; Entzminger v. Seaboard Air Line Ry., 79 S.C. 151, 60 S.E. 441.[2] Notwithstanding my disagreement with the amount awarded, I am not prepared to say in this case, that the amount of the damages is so excessive, unreasonable or extravagant as to evince that the jury was actuated by passion, partiality, prejudice, corruption, caprice, or the like, and I cannot say, under all the testimony, that it was impossible for the jury to have properly arrived at the amount of its verdict.

For the foregoing reasons, the motion for a new trial, upon the ground of excessiveness, is denied.

---

[1] This information was furnished by Major F. Perry Sessions, General Agent of The Union Central Life Insurance Company for the State of South Carolina. It is not in evidence. I have used it for the purpose of analyzing the verdict of the jury.

[2] Opinions by Justice C. A. Woods, later Circuit Judge, Circuit Court of Appeals for the Fourth Circuit.