John R. HOULIHAN, Plaintiff,

v.

TURNER CONSTRUCTION COMPANY, Defendant.

Civ. A. No. 1815.

United States District Court
D. Rhode Island.
Feb. 28, 1956.

directed to employ said crane in the task of raising cement from the ground to the roof of the building then under construction; that it was the duty of the defendant to select a tag-man, so-called, to direct and signal the crane operator when the bucket employed in hoisting said cement should be raised and lowered; that the defendant selected one Kelliher to perform this task; that it then became the duty of the defendant by its agent, the tag-man, to exercise due and reasonable care in directing the crane operator in said hoisting operations so that said bucket would not strike the plaintiff while he was in the exercise of due care and lawfully on the premises in the vicinity of said crane; that notwithstanding its duty in this respect the defendant by its said agent did recklessly, carelessly and negligently direct the operation and control of the crane, giving incorrect signals and failing to observe the plaintiff as a result of which the plaintiff was struck and seriously injured.

Plaintiff also instituted a similar action against White Plains Iron Works, Inc., said action being docketed as Civil Action No. 1879 in the files of this Court. The allegations of the complaint in that action were substantially similar to those in the complaint in the instant action except that the plaintiff alleged therein that the tag-man, so-called, was the agent of White Plains Iron Works, Inc.

Upon the motion of the plaintiff, the two actions were consolidated for trial to a jury.

Edward I. Friedman, Providence, R. I., for plaintiff.

Lee A. Worrell, Providence, R. I., for defendant.

DAY, District Judge.

The defendant has moved for a new trial after a verdict by the jury in favor of the plaintiff in the sum of $150,000. In his complaint the plaintiff alleged that on or about March 23, 1953 he was employed by the W. J. Halloran Co. as a crane oiler; that his employer directed him and one William Burns, the crane operator, to take the crane to the premises of the St. Regis Paper Company at East Providence, Rhode Island where the defendant was erecting a building; that at said premises he and Burns were

Prior to the trial the defendant joined the W. J. Halloran Steel Erection Co. as a third-party defendant. In doing so it relied upon its contract with that corporation to furnish all labor for the installation of reinforcing steel bars and wire mesh required in the construction of a building of the St. Regis Paper Company. This contract contained a provision under which the W. J. Halloran Steel Erection Co. assumed the entire responsibility for any and all damages growing

out of or resulting from the execution of the work to be performed by it under its contract.

The evidence established that White Plains Iron Works, Inc. was a sub-contractor of the defendant in this action, that the tag-man was an iron worker by trade and was supplied by it to the defendant to direct the hoisting operations in accordance with a labor union requirement that only an iron worker may be permitted to perform such duties.

At the conclusion of the evidence I directed the jury to return a verdict in favor of the third-party defendant for the reasons stated by me at that time, as appears in the record. The two actions were then submitted to the jury which after at least six hours of deliberations returned a verdict in favor of the defendant White Plains Iron Works, Inc., and a verdict in favor of the plaintiff against Turner Construction Company in the sum of $150,000. In addition, the jury returned answers to three requests for specific findings. These requests and findings follow:

"1. By whom was Leo Kelliher, the Tag-man, employed at the time the plaintiff sustained his injuries on March 23, 1953? (Ans.) The Turner Construction Company.

"2. Was Leo Kelliher, the Tag-man, negligent? (Ans.) Yes.

"3. If your answer to (2) above is 'Yes', was that negligence the proximate cause of the plaintiff's injuries? (Ans.) Yes."

The defendant has moved for a new trial upon the following grounds, viz.:

1. The verdict is contrary to the law.

2. The verdict is contrary to the evidence.

3. The verdict is contrary to the law and the evidence.

4. The verdict is excessive and appears to have been given under the influence of passion and prejudice.

5. There is no sufficient or substantial evidence tending to support the amount of the jury's verdict.

6. The court erred in its failure or refusal to instruct the jury to make the following special findings, numbered as submitted to the Court:

"(3) Did the plaintiff sustain injury as a result of any negligence of William Burns, the crane operator?

"(4) If the plaintiff sustained injury by virtue of any negligence of either Leo Kelliher or William Burns, were both Kelliher and Burns negligent at the same time?

"(5) By whom were the plaintiff and the crane operator employed at the time of injury to the plaintiff?

"(6) Did W. J. Halloran Steel Erection Co. supply the plaintiff and the crane operator, together with the crane, to the defendant Turner Construction Company?

"(7) Do you find that the plaintiff, Burns and Kelliher all stood in the same relationship to Turner at the time of plaintiff's injury?"

7. That the Court erred in its failure or refusal to include as part of his charge to the jury, the following numbered charges as submitted to the Court:

"(3) That if you find that Kelliher was directed by his foreman, while working for White Plains Iron Works, Inc., to tag the rig and that he could be removed from his work as tag-man only by the direction of White Plains Iron Works, Inc., then if Kelliher was negligent in the performance of that work, resulting in injury to the plaintiff, your verdict must be against White Plains Iron Works, Inc., only.

"(4) That if you find that the crane operator, Burns, was under the direction, supervision and control of Turner upon the day in ques-

tion and that Burns was negligent in the operation of the crane, then the plaintiff cannot recover in this action as his injury resulted from the negligence of his fellow servant Burns."

8. That improper argument of counsel for the plaintiff was made to the jury, citing nine alleged instances thereof.

9. That the Court erred in its failure or refusal to include as part of the charge to the jury directions to the jury that in considering any damages for prospective loss of earnings it should also consider the reduction of such loss by rehabilitation and ability of the plaintiff to enter employment within his capacities and for wages, at least to the extent supported by the evidence in the case.

I shall discuss herein the various grounds urged in support of defendant's motion in the order in which they are above set forth.

■ As to grounds 1 to 5 thereof, there is more than ample evidence to warrant the conclusion of the jury that the tag-man was the agent of the defendant at the time the plaintiff was injured and that his negligence was the proximate cause of the plaintiff's injuries. However, the defendant argues most vigorously that the verdict is so excessive that "it appears to have been given under the influence of passion and prejudice" and that accordingly it should be set aside and a new trial ordered.

■ ■ The verdict of a jury should not be set aside unless it is so grossly excessive as to shock the court's sense of justice and the impropriety of allowing it to stand is manifest. In the absence of a showing that a verdict of the jury is the result of passion, prejudice or sympathy where there is substantial evidence in the record to support the award it would be an unwarranted interference by me with the constitutional right to trial by jury for me to substitute my judgment for that of the jury. Werthan Bag Corp. v. Agnew, 6 Cir., 202 F.2d 119, 122; Jones v. Atlantic Refining Co., D.C.Pa., 55 F.Supp. 17, 19; Malone v.

Suburban Transit Co., D.C.S.C., 64 F. Supp. 859, 865; Thomas v. Conemaugh Black Lick Railroad, D.C.W.D.Pa., 133 F.Supp. 533, 547.

■ In the present case the evidence is uncontradicted that prior to the accident the plaintiff was an active, healthy young man of thirty-nine years of age. His occupation was then that of an oiler and previously he had been employed both as oiler and operator of construction and highway equipment. As a result of the negligence of the defendant's agent he was struck by a bucket containing about two tons of cement and knocked to the ground. Without reviewing the extent of his injuries in detail, suffice it to say he sustained compound fractures of his right leg, and injuries to his shoulder and body generally. He was in a severe state of shock when brought to the hospital. Transfusions of seven pints of blood were given to him during his initial operative treatment at the hospital. He was hospitalized for a period of four hundred forty-five days, and for approximately six months his body was incased in what is called a spica cast which extended from the toes of his right foot to his waist and from his left knee to his waist. This cast immobilized him completely. During his stay in the hospital he suffered intense pain and during most of his confinement opiates were administered to relieve his pain. In addition to compound fractures of his right leg, the circulation thereof was permanently impaired. Prior to his discharge he was fitted with a steel brace which extends from his right toes to his hip. His right leg is to all intents and purposes worthless and cannot be bent. At the time of trial he could stand and walk only with the aid of two crutches and he had been undergoing regular therapy treatments for approximately the previous year in an attempt to improve his circulation. While in the hospital he underwent, in addition to operations on his leg, an operation for the removal of gallstones due, according to his doctor, to his enforced confinement in bed. At the trial he testified that

he was still suffering pain and discomfit from his injuries. No testimony of any sort was offered by the defendant in contradiction or in mitigation of the extent and seriousness of the plaintiff's injuries, and the permanent disability resulting therefrom.

Plaintiff's medical and hospital bills up to the time of trial exceeded $8,000, and there was substantial evidence from which the jury could reasonably find that his condition would require treatment for an indefinite period in the future. His wage loss prior to the trial was substantially in excess of $10,000. At the time plaintiff was injured the standard weekly wage of an oiler under the union scale was $91 per week with a premium rate for overtime work. Previous to his employment by the W. J. Halloran Co. his weekly wages in 1952, including overtime, had ranged from approximately $65 to approximately $150 although during this period he was employed by nine different employers. This may well have accounted for the disparity between the weekly wage payments.

There was, however, credible testimony that the plaintiff had reached the point where he could qualify for the job of crane operator at a much higher wage, and that it was not unusual for crane operators or oilers to be employed after attaining the age of sixty-five years. Without reviewing this evidence in detail the jury could well have found that the plaintiff could have earned in the future any sum between $91 and $135 per week. At the time of trial he had a life expectancy of 33.2 years as projected by the life tables published by the United States Department of Health, Education and Welfare. Accepting the viewpoint of the defendant that apart from his injuries the plaintiff could not have engaged in his usual occupation after the age of sixty-five, the present value of the gross earnings of the plaintiff for only twenty-three years, discounted at the rate of 3½% per annum, could have ranged between $75,000 and $115,000. However, the jury could have reasonably found that the plaintiff could have continued his occupation after sixty-five years of age there being evidence that other individuals above that age were so employed at the time of the trial. There was no evidence of any compulsory retirement age.

In addition to his pecuniary losses, past and prospective, and his expenses, the plaintiff was entitled to reasonable compensation for his pain and suffering, past and future, and for his inconvenience and disfigurement. There can be no doubt that he suffered great pain and discomfit during his almost fifteen months in the hospital, that he was still suffering therefrom at the time of trial and that he will continue to do so in the future. I know of no yardstick or unit of measurement by which I can fairly and honestly say that the total verdict of the jury, including as it does an award for these elements of damage in addition to his pecuniary losses, is so excessive as to shock my conscience. The verdict was liberal. If I had heard the case without a jury I might have awarded the plaintiff less. This does not mean, however, that I am convinced that the jury's verdict was prompted by passion, prejudice or sympathy. On the contrary, I believe that there was substantial evidence to support the award of the jury which in my opinion was an intelligent, conscientious and representative body of men and women. In my opinion it would be an unwarranted usurpation by me of the province of the jury if I were to disturb its verdict on the ground that it was excessive.

As the sixth ground in support of its motion the defendant urges that I erred in refusing to submit certain requests for special findings to the jury. I believe these requests were properly denied by me. In my opinion my general charge to the jury adequately covered all the issues raised by the pleadings and the evidence. And in passing, it may be observed that no demand for their submission to the jury was made by the defendant after my charge and before the jury retired as required by Rule 49 of

the Federal Rules of Civil Procedure, 28 U.S.C.A.

■■ Ground (7) of the motion is that I erred in my failure or refusal to include as a part of my charge defendant's (requests to) charges numbered (3) and (4). I do not believe that request numbered (3) represents an accurate statement of principles of law governing the determination of the question of the responsibility for the negligent acts of a person who is in the general employ of one person and who is temporarily loaned to another. Request numbered (4) although not given in language sought by the defendant was in substance included in my general charge. It may likewise be observed that no objection to my failure to give either of these instructions was made before the jury retired to consider its verdict.

As ground (8) of its motion the defendant contends that counsel for the plaintiff made improper argument to the jury. Counsel for the defendant objected twice to his argument. On both occasions I sustained these objections, cautioned plaintiff's counsel and admonished the jury that they were to be concerned only with the evidence and the inferences to be drawn therefrom. No further objections were made by counsel for the defendants. In my general charge I instructed the jury that the arguments of counsel were not evidence and that passion, prejudice or sympathy were not to influence their judgment in any way. The argument of plaintiff's counsel was vigorous. If at times it did not meet with the approval of counsel for the defendants it was their duty to object and make known the basis of their objection. I cannot say that it was improper to the extent that would warrant me in vitiating the verdict of the jury. Nor can I say that the jury disregarded my careful instructions as to the consideration to be given by them to the arguments of counsel.

■ The last ground of the defendant's motion is that I erred in failing to include as a part of my charge "direc-tions to the jury that in considering any damages for prospective loss of earnings it should also consider the reduction of such loss by rehabilitation and ability of the plaintiff to enter employment within his capacities and for wages at least to the extent supported by the evidence in this case." Although counsel for the defendant did not file a written request for such an instruction at the close of the evidence as required by Rule 51 of the Federal Rules of Civil Procedure, he and counsel for White Plains Iron Works, Inc. did call my attention to their desires in this direction before the jury retired. My refusal to so instruct was because I felt there was no evidence before the jury to warrant such an instruction. The defendant produced no evidence as to the type of work which the plaintiff might some day be expected reasonably to be able to perform or what his income therefrom might be. The only testimony concerning such a possible occupation was a statement by the plaintiff's doctor, under cross-examination, that there was a *possibility* that the plaintiff might be able to do some bench work such as assembly work in the jewelry trade. In my opinion this testimony without any elaboration or further evidence as to the income from such a possible job did not warrant the requested instruction. After counsel were informed by me of my refusal to instruct along the lines urged by them, no objection to my refusal was noted by them.

I have given this motion long and careful consideration. Having lost, the defendant is not entitled as a matter of right to have a second chance upon a new trial before a different jury even though the verdict might be for a less amount.

After mature reflection, it is my opinion that the verdict of the jury is truly responsive to the merits of this controversy, that it is not the result of passion, prejudice or sympathy, that it does substantial justice between the parties, and that the defendant is not entitled to a new trial.

The defendant's motion for a new trial is denied.