PEARL COUNTRYMAN, as Administrator of CHRISTINA COUNTRYMAN, Deceased, Appellant, *v.* THE FONDA, JOHNSTOWN AND GLOVERSVILLE RAILROAD COMPANY, Respondent.

1. NEGLIGENCE — ELECTRIC RAILWAY — QUESTION OF FACT. The fact that an electric car running at a high rate of speed did not strike a cutter moving on the track does not necessarily relieve a railway company from the charge of negligence, where in an action for damages the jury might have found upon the evidence that the driver, in his effort to avoid instantaneous disaster, was compelled to turn rapidly to the right, and, while he succeeded in clearing the track, he upset the cutter in attempting to drive over a ridge of ice and snow lying between the track and the highway, whereby one of the occupants of the cutter was thrown out, struck by the step or snow scraper on the rear end of the car and was killed.

2. DEGREE OF ALERTNESS REQUIRED, WHEN A QUESTION OF FACT. The degree of alertness required of the driver, where it appeared that a car passed over the track every half hour and in the wintry weather existing at the time of the accident a longer time elapsed between cars, is a question for the jury.

3. PROSPECTIVE AND INDEFINITE DAMAGES, WHEN A QUESTION OF FACT. The question what damages, if any, aside from actual disbursements, are recoverable in an action under sections 1902 *et seq.* of the Code of Civil Procedure, by the next of kin of a person negligently killed, which action is purely statutory and in which the damages recoverable are not capable of exact proof, being remote, uncertain and not recognized by the common law, is a question for the jury to determine in the exercise of a reasonable discretion in view of the situation as proved.

*Countryman* v. *Fonda, J. & G. R. R. Co.,* 33 App. Div. 636, reversed.

(Argued January 28, 1901; decided March 12, 1901.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the third judicial department, entered September 28, 1898, affirming a judgment in favor of defendant entered upon a dismissal of the complaint by the court on trial at Circuit.

The nature of the action and the facts, so far as material, are stated in the opinion.

*Clark L. Jordan* for appellant. There was sufficient testimony on the question of defendant's negligence to make it one of fact, and it should have been submitted to the jury. (*Young* v. *Atlantic Ave. R. R. Co.,* 10 Misc. Rep. 541; *Meisch* v. *Rochester El. Ry. Co.,* 72 Hun, 604; *Ward* v. *N. Y. & H. R. R. Co.,* 79 Hun, 390; *Witte* v. *B. C. Ry. Co.,* 4 Misc. Rep. 286.) The trial court erred in determining as a question of law that no damage had been suffered by the next of kin. (*Thomas* v. *U. & B. R. R. R. Co.,* 6 Civ. Pro. Rep. 353; 34 Hun, 626; 98 N. Y. 649; *Birkett* v. *K. Ice Co.,* 110 N. Y. 504; *Houghkirk* v. *D. & H. C. Co.,* 92 N. Y. 219; *Lockwood* v. *N. Y., L. E. & W. R. R. Co.,* 98 N. Y. 523; *Murphy* v. *N. Y. C. & H. R. R. R. Co.,* 88 N. Y. 445; *Carpenter* v. *B., N. Y. & P. R. R. Co.,* 38 Hun, 116; *Quin* v. *Moore,* 15 N. Y. 433.) The circumstances in this case show the absence of negligence on the part of plaintiff's intestate. (*Hart* v. *H. R. B. Co.,* 80 N. Y. 622; *Hoffman* v. *U. F. Co.,* 47 N. Y. 176; *Button* v. *H. R. R. R. Co.,* 18 N. Y. 248; *Weston* v. *City of Troy,* 139 N. Y. 281; *Strauss*

v. *N. E. Ry. Co.*, 6 App. Div. 264; *Zimmermann* v. *U. Ry. Co.*, 28 App. Div. 445 ; *Bergold* v. *N. E. R. R. Co.*, 30 App. Div. 438.)

*A. D. L. Baker* for respondent. No negligence on the part of the defendant was proven. (*Jager* v. *C. I. & B. R. R. Co.*, 84 Hun, 307.)    The evidence in the case clearly shows that the plaintiff's intestate was guilty of contributory negligence. (*Hoag* v. *N. Y. C. & H. R. R. R. Co.*, 111 N. Y. 199 ; *Adolph* v. *C. P., N. & E. R. R. R. Co.*, 76 N. Y. 530 ; *Burke* v. *N. Y. C. & H. R. R. R. Co.*, 73 Hun, 32 ; *Pechesky* v. *M. S. Ry. Co.*, 30 Misc. Rep. 432 ; *Ward* v. *R. El. Ry. Co.*, 43 N. Y. S. R. 84.)    There was no property loss on the part of the next of kin of the deceased, and there was no data upon which any property loss could be estimated by the jury. (*Kennedy* v. *M. S. Ry. Co.*, 11 Misc. Rep. 320 ; *Adolph* v. *C. P., N. & E. R. R. R. Co.*, 76 N. Y. 530 ; *Lehman* v. *City of Brooklyn*, 29 Barb. 234 ; *Tilley* v. *H. R. R. R. Co.*, 24 N. Y. 471 ; Sedgw. on Damages ['7th ed.], 535 ; *Leeds* v. *M. G. L. Co.*, 90 N. Y. 26 ; *Houghkirk* v. *D. & H. C. Co.*, 92 N. Y. 219 ; *Scott* v. *Banks*, 44 App. Div. 28.)

BARTLETT, J.    This is an action by an administrator to recover damages for causing the death of his intestate, resulting from the alleged negligence of the defendant, brought under the provisions of the Code of Civil Procedure (§§ 1902 to 1908).

On the morning of the third day of January, 1895, Christina Countryman, the deceased, was riding in a cutter with one Walter C. Coates, traveling in a southerly direction on Main street, in the city of Gloversville.

The defendant operated on that street, in the center thereof, a single-track electric railroad, there being sufficient space between the track and the curbstones on either side for the passage of vehicles.

On the day in question there was a considerable body of snow, which had been cleared from the track of the defend-

ant by depositing it to some extent upon the driveways on either hand.    The day was cold and the deceased was bundled up in a shawl and cloak.    Mr. Coates, who was about thirty-eight years of age, was driving his own horse, and his immediate errand was to take the deceased several miles into the country to the house of a friend.    They were driving on the track of the defendant at a rate of speed that Coates testified was from eight to ten miles an hour.

It appears that the cars passed over this route about once every half hour, except that in wintry weather they were not so frequent.    When a little south of Second avenue, which crosses Main street at right angles, Coates heard someone shout " get off the track, the car is coming;" he states that up to that moment he had not heard the bell ring and did not know the car was approaching.    An eye-witness testifies that the car was about seventy-five feet from the cutter at the time this warning was given.

There is a conflict in the evidence as to the speed of the car.    One witness puts it as high as twenty miles an hour, but it may be fairly inferred from the testimony of plaintiff's witnesses that it was twelve miles an hour.

After Coates had been thus warned, what occurred may be given in his own language : " I looked around and saw the car coming.    I pulled my horse quick to the west to get off the track; I think there was a team on the other side and I couldn't pull out there ; on the east side I think there were teams, but I would not swear positively.    Q.  Tell what occurred ?    A.  We turned there and the cutter tipped over.    Q.  Where did it tip ?    Where with reference to the track that you turned out of, how near to that ?    A.  I should not think that the hind runner was over a foot and a half or two feet from the track; it was very close to the car ; I mean the hind end of the runner.    Q.  What did the runner strike, if anything ?    A.  A ridge of snow at the west side of the track.    Q.  How far from the track ?    A.  About eight or ten inches ; something like that I should think from the rail.    We measured the ridge in the afternoon and it was twelve inches above the

rail; we averaged it up at twelve inches right along there within a few feet. Some of the way it would be six or eight and ten and twelve inches; and some of the way fifteen inches. This ridge was hard, with a soft snow that came the night before, underneath it was hard snow and ice. When the cutter tipped over Mrs. Countryman fell out; she fell to the east with her head north and feet south; I think she had a shawl and cloak on."

This witness was asked on cross-examination if he had been going at a moderate gait whether he could have turned out, and he stated that if the horse had been on a slow walk and he had gotten up on the edge of the cutter it would not have tipped over. Coates further testified, in substance, that he did not think the car struck the cutter, but that Mrs. Countryman fell out on the side toward the car when they tipped over, and the step or the snow scraper on the rear end of the car struck her in the head as she was lying upon the ground.

It appears that after the accident deceased was at once carried into the office of a physician near by, and it was ascertained that she was suffering from three fractures of the skull; she never regained consciousness and died a few hours later.

Dr. Furbeck, who witnessed the accident, testified that the car passed on beyond the point where the intestate was injured some 150 or 200 feet before it was stopped. The testimony of this witness does not vary, materially, as to the accident from Coates' account of it.

Harvey E. Cromwell was also a witness to the accident and testified that the car was going from ten to fifteen miles an hour, and stated that according to his very best judgment it was moving at the rate of twelve miles an hour. He placed the speed of the horse at from eight to ten miles an hour. He testified as follows (referring to Mr. Coates): " I saw him try to turn out, and I saw after he started to do so that the cutter began to slide on the first ridge of snow, and I should judge from the way it slid it struck a hard lump and tipped over. After the cutter had entirely left the track, I should think the

hind end of the cutter might have been perhaps twelve or fifteen inches when it began to tip over before it made the second ridge. The lady fell out and struck directly on her back, and he fell out shortly afterwards. * * * The forward scraper of the car struck the lady; the underside of the forward scraper. * * * The bell was not ringing when I first turned around; if it was I did not hear it; I heard the rumbling first. Q. How soon after you heard the rumbling and had turned around before you heard the bell? A. Within perhaps ten or fifteen feet; I did not hear anybody hallooing at all; I did not pay any attention to the motorman; I turned around to watch the people to see if they were going to get out safely."

On cross-examination the witness said: " I will simply swear that I did not hear it ring; I did not hear the bell ring; that was true at all points. * * * According to my best judgment the car was going twelve miles an hour."

Coates admits that prior to the time that he had received the warning from the passerby that the car was coming he had not been listening for it, had not looked back to see if it was coming; that he did not think anything about the bell or the car. Coates swore that he frequently drove upon the track and was familiar with the general situation.

As the nonsuit was granted at the close of the plaintiff's evidence, the inquiry is whether the record, as it then stood, presented a question for the jury. While there are six grounds on which the motion for nonsuit was based, they present but three propositions: (1) That plaintiff's intestate was guilty of contributory negligence as matter of law; (2) that no negligence was proven on the part of defendant, and (3) that no damages were proved.

We are of opinion that it was error on the part of the learned trial judge to dismiss the complaint, as there was sufficient evidence on all the points raised to entitle the plaintiff to go to the jury.

The trial judge, before granting the motion for a nonsuit, said, among other things: " The way it strikes me is there is

a different state of facts presented here than there would be provided the car had actually struck the sleigh and overturned it.   In that event the question of speed would be a more important matter.   *   *   *   How an accident of that kind could have been apprehended and how the speed of the car had anything to do with such an accident, does not appear quite clear.   *   *   *   In any event I do not see how the railroad company in its propulsion of the car at any rate of speed had anything to do with this accident."

The fact that the car did not strike the cutter does not necessarily relieve the railway company from the charge of negligence arising from the motorman approaching Coates and the intestate at a very high rate of speed, thereby putting them in great peril and giving the driver little opportunity to escape a serious accident.   It was possible for the jury to find that Coates, in his effort to avoid instantaneous disaster, was compelled to turn rapidly to the right, and, while he succeeded in clearing the track, he upset the cutter in attempting to drive over the ridge of snow lying between the railroad track and the highway.   It is described by one witness, as already pointed out, as a ridge some twelve inches in height, covered with a slight coat of new snow on top, while underneath it was hard snow and ice.

This court held in *Adolph* v. *Central Park, N. & E. R. R. R. Co.* (76 N. Y. 530) that it was the duty of one driving upon the track of a street railway company not only to turn off from the track when called upon by a servant of the railroad company, but to listen to whatever signal there may be from an approaching car, and he should also look behind him from time to time, so that he may, if a car is near, turn off and allow it to pass without hindrance or undue slackening of ordinary speed.

In the case at bar there is a qualifying fact, to wit, the infrequency of the cars passing over the route, it appearing in evidence that the headway was one in every half hour, and in wintry weather, such as existed at the time of the accident, a longer time elapsed between cars.   It was for the jury to

say, under these circumstances, what degree of alertness would be required of a man in Coates' position.

As a new trial must be had, it is necessary to briefly consider the question of damages.

In an oral opinion delivered on dismissing the complaint the trial judge said, in part: "There does not seem to have been any property loss on the part of the next of kin of this deceased, as shown by the evidence in this case. There is no data upon which any property loss could be estimated by the jury. * * * But here is a woman without any children to whom she owes any duty; without the power to accumulate property, simply earning her own living by housework. To say that these two children have suffered a property loss in dollars and cents from these facts, and leave it to the jury as pure guesswork, is something I do not understand the courts to permit."

It is true plaintiff failed to prove certain direct pecuniary damages that would have made up a part of the recovery in this case had the jury found in his favor, such as funeral expenses, doctors' bills, including the autopsy, and any other disbursements incident to the care of the deceased after the accident.

In regard to such damages, made up of actual disbursements, the jury is not allowed to guess or speculate, as they are easily proved, and no recovery beyond nominal damages can be had unless they are established by proper evidence. (*Leeds* v. *Metropolitan Gas Light Co.*, 90 N. Y. 26, 29.) In the case cited Judge FINCH said: "Where the loss is pecuniary and is present and actual and can be measured, but no evidence is given showing its extent, or from which it can be inferred, the jury can allow nominal damages only."

There are, however, in actions like, the present, which is purely statutory, damages recoverable which are not capable of exact proof, being remote, uncertain and not recognized by the common law.

This court, in a recent case, has considered the nature of this action and the measure of damages therein. (*Matter of*

*Snedeker* v. *Snedeker*, 164 N. Y. 58.) The case cited involved the question of the pecuniary interest of the father in the life of his son. The court pointed out that the statute evidently deals with remote and uncertain damages not recoverable at common law. It then states : " It might have happened had the son survived thirty years that his wife would have died childless, and he be left as the only support of an aged and penniless father ; or, if no father was living, but several next of kin of the same degree, it is within the range of possibilities that the decedent might have accumulated within his added years of life a considerable estate and died leaving it to them."

In *Matter of Meekin* v. *Brooklyn Heights R. R. Co.* (164 N. Y. 145) it was held that this cause of action is a property right which is not affected by the death of the administrator, who was the sole next of kin of the decedent, but vested in his legal representatives.

In *Houghkirk* v. *D. & H. C. Co.* (92 N. Y. 219) Judge FINCH said : " The statute implies from the death of a person negligently killed, damages sustained by the next of kin. Recognizing the generally prospective and indefinite character of those damages, and the impossibility of a basis for accurate estimate, allows the jury to give what they shall deem a just compensation," etc.

In the case at bar it is a question for the jury to determine, in the exercise of a reasonable discretion, what damages the next of kin of the intestate have suffered, if any, considering the situation as proved.

The deceased was a woman fifty-three years of age, leaving two children, a daughter twenty-two years old and a son of twenty-five. The mother supported herself as did the children.

It is for the jury to consider if the health of the daughter should fail whether the mother might not take her to her own home, nurse and care for her indefinitely. The same might be true of the son. In other words, they are permitted to consider in a reasonable way those prospective and indefinite

damages arising from the death of a mother under these circumstances, in addition to the actual money damages as proved.

The judgments of the trial court and Appellate Division should be reversed and a new trial granted, with costs to abide the event.

PARKER, Ch. J., GRAY, MARTIN, VANN, CULLEN and WERNER, JJ., concur.

Judgments reversed, etc.