# THE
# New York Supplement

## VOLUME 74,

AND

## New York State Reporter,

## VOLUME 108.

---

(68 App. Div. 351.)

### PERRY v. METROPOLITAN ST. RY. CO.

(Supreme Court, Appellate Division, Second Department. January 24, 1902.)

1. STREET RAILWAYS—PERSONAL INJURIES—EXHIBITION OF PLAINTIFF'S PERSON.
   Where defendant in a personal injury action contended that plaintiff's injuries were not as serious as alleged, it was not error to allow the injured portion of plaintiff's body to be exhibited to the jury, and the injuries thereon to be pointed out by a physician.

2. SAME—EVIDENCE—CROSS-EXAMINATION.
   Where one motorman had testified that the car was not going at a "high rate of speed" at the time of the accident, and another stated that the car was moving at a speed of about six miles an hour at the place of the accident, a question as to whether the car ran at a speed of less than six miles an hour at any point for some distance before the place of the accident was competent on cross-examination of the latter witness to test his recollection, and to determine what was meant by "a high rate of speed."

3. SAME—DAMAGES.
   Where plaintiff in an action for personal injuries was 45 years old, and had four ribs fractured and pushed in so as to cause permanent injury, affecting respiration and producing constant pain. and destroying his earning capacity, which had formerly been $10 a week, a verdict for $4,500 was not excessive.

Appeal from trial term, Kings county.

Action by William Perry against the Metropolitan Street Railway Company. From a judgment in favor of plaintiff, defendant appeals. Affirmed.

Argued before GOODRICH, P. J., and BARTLETT, WOODWARD, HIRSCHBERG, and JENKS, JJ.

Theodore H. Lord, for appellant.

John M. Ward, for respondent.

74 N.Y.S.—1

JENKS, J   The plaintiff was driving a coal cart across the tracks of the defendant, when its car collided with the cart, so that the plaintiff was thrown to the ground and was injured. The questions of negligence and of contributory negligence were for the jury. The verdict for the plaintiff is justified by the evidence. The appellant also insists that the judgment should not stand because there were two errors in the rulings of the learned court, and because the damages are excessive.

The first error assigned is that the court permitted a physician to exhibit the bared body of the plaintiff to the jury, and to point out thereon physical signs of the injuries. The plaintiff alleged that several of his ribs had been fractured, and that he had been injured about the body and internally, and that the injuries were permanent. The house surgeon of the hospital where the plaintiff was treated testified that there was a fracture of several ribs,—probably the seventh, eighth, ninth, and tenth on the right side,—and that a further examination made by him but three days before the trial revealed that there was a deformity which involved three ribs, and which was permanent, so that a part of the lungs was "embarrassed"; that, "if there were nerves going up to the seat of fracture, it [they?] were liable to be involved in the callous"; and that pain might be constant. During the cross-examination of this physician, the learned court asked the counsel for the defendant:

"Q. Are you going to dispute the fact that this man's ribs were broken? A. I will make the contention that the injury was not as serious as claimed, at all."

Thereafter the learned court permitted the physical demonstration in question. I do not find that any exception was taken, but, if exception appeared, I think that the ruling of the learned court (Herrick, J.) was not erroneous. For such physical exhibition was necessary to a demonstration of the deformity testified to by the physician, and tended to make the description of the injury more intelligible to the jury. Mulhado v. Railroad Co., 30 N. Y. 370. The principle in that case is not questioned in Rost v. Railroad Co., 10 App. Div. 478, 41 N. Y. Supp. 1069, cited by the learned counsel for the appellant. In the latter case the court permitted an exhibition of the severed foot, which had been preserved, although the defendant admitted that the amputation had been made, and disavowed any contention that it had not been properly performed. The counsel for the plaintiff in the Rost Case stated the object was "to show the size of the child at the time." We said that the size of the child at the time of the accident was of comparatively little importance; that, as the child was present at the trial, the jury could judge of this fact by observation quite as well as by such an exhibition; and that, although it might be assumed that technically the rule permitted such an exhibition, yet it had little force where no legitimate object was to be subserved, while the tendency of the exhibition was to arouse the prejudice and inflame the passions of the jury. There is a manifest distinction between an exhibition of a deformed body by way of a more intelligent and satisfactory understanding of the injury (and its effects where

the extent and character of the injury are challenged), and the exhibition of a dead and severed part of the body, where the injury is unchallenged, and when the purpose of the show is to prove a matter of minor importance fully capable of proof by evidence which has no tendency to influence or to prejudice the jury.

It is also contended that it was error to permit the plaintiff to prove that the speed of the car at other points on the road was different from that near the point where the accident occurred. The speed just before the collision was a material question. There were two motormen on the car, one being a new man under instruction by a more experienced motorman. The testimony for the plaintiff was that the "green hand" was in control at the time of the accident. This was denied by the defendant. The new motorman was called by the defendant. Upon cross-examination he testified:

"My estimate now is that he [i. e., the old motorman] was going then—well, about six miles. This is not the way Lewis [the old motorman] taught me to run a car through the streets of New York, all the way from Harlem down to Hudson street,—to go at the rate of eight miles an hour between intersecting streets, and slow down to only six miles an hour at crossing an intersecting street. Q. Was there any time from Harlem down that Lewis sent this car across an intersecting street at a less rate of speed than six miles an hour? (Objected to,—what he may have done at any other point. The question is, what he was doing at the time of this collision?) The Court: You may ask it. (Defendant excepts.)"

Upon the direct examination of Lewis he had testified in reply to the defendant's counsel:

"I had crossed Perry street. My car was not going at a high rate of speed. We never go at a high rate of speed at any crossing. I was going at about three-quarter rate of speed,—the fastest."

The new motorman had testified that before the car reached Perry street (the vicinity of the accident):

"I felt him throwing his power off. The speed reduced to about probably six miles an hour. * * * to my estimation, at the time,—being a new man; * * * probably five or six miles."

I think that the question was competent on cross-examination, to determine both what Lewis meant by a high rate of speed, and to test the recollection of the adverse witness as to the speed at this particular point.

The verdict is for $4,500. The plaintiff was 45 years old. Four of his ribs were fractured and pushed in so as to cause permanent deformity, which affected his lungs, and consequently his respiration. There is continuous pain. The plaintiff also received a scalp wound, which left a scar. He suffered from pleurisy, and suffers pain whenever he attempts to do anything. He testifies that he had not been able to work at all since the accident, although prior thereto he had earned $10 a week. No medical testimony was offered by the defendant, and its learned counsel stated at the close of the summing up that it did "not go to the jury on the question of his injuries, but on the fact that it was not responsible for the accident." I think that the verdict should stand.

The judgment and order should be affirmed, with costs. All concur.