Louis L. Friedman, J.
On February 11, 1957 an accident occurred at the corner of Broadway and Hooper Street, in the Borough of Brooklyn, City of New York. At that time the plaintiff Ismail was riding as a passenger upon a motorcycle owned by one Hussein (not served in this action) and operated by the plaintiff Vurgun. It is the claim of the plaintiffs that the motorcycle was in collision with a truck of the Department of Sanitation of the City of New York, and that as a result of that collision, the motorcycle went out of control, struck another motor truck on the opposite side of the street and threw both plaintiffs to the pavement, thus causing them the personal injuries for which they each brought separate actions. Plaintiff Ismail sued both the City of New York and the said Vurgun, while in another action, plaintiff Vurgun sued only the City of New York. In the title of the present action, Vurgun is named as both a plaintiff and a defendant by reason of a consolidation order entered on October 31, 1958. For the pur *819 poses of this decision, however, the two actions may be regarded separately.
In his action, plaintiff Ismail contended that the operators of both the Sanitation Department vehicle and the motorcycle were negligent. In the Vurgun action, it was asserted that only the Department of Sanitation vehicle was responsible for the happening of the accident. The case was tried for almost two weeks, and by its verdict, the jury found that the operator of the Sanitation Department truck was solely responsible for this accident. Motions to set aside the verdict were made by the City of New York, and said defendant also moved for a renewal of a motion made during the course of the trial, that a mistrial be declared. Decision was reserved upon those motions, and it is those motions which are to be decided at this time.
The issue as to liability was sharply contested. Both plaintiffs contended that the sanitation truck made a sudden left turn, thus causing a collision with the motorcycle, which was to the left of said truck, going in the same direction. The city, on the other hand, contended that its vehicle was standing still, waiting for the light to change, so that it could make a left turn, and further contended that there was no contact at all with the motorcycle. The version of each of the parties was supported by a number of witnesses, and since the evidence with respect to liability was sufficient to sustain the jury’s determination of the facts, the court may not interfere with such determination.
Two other questions, however, present themselves for determination and they are respectively (1) whether the incident which occurred during the course of the trial was so prejudicial to the defendant that it justified the granting of a mistrial, and (2) whether the amount of the verdict is warranted by the evidence. The court will discuss each of these questions separately.
After the trial had proceeded for several days and some medical and other proof had been presented, plaintiff collapsed in the courtroom. Immediately prior to that time he had been seated in the spectators’ section of the courtroom, and the first indication that anything was about to occur was when he arose from his seat, spoke loudly and then fell to the floor behind one of the benches. His wife who had been seated alongside of him at that time, at first attempted to assist him, and then ran forward to where plaintiff’s lawyer was standing directly before the Bench and alongside of the jury box. In the meantime, the court had already directed that the jury *820 be taken from the courtroom and that instead of going through the main doorway of the courtroom, which would bring them past the place where plaintiff was lying on the floor, that they instead be taken through the side door into the Judge’s robing room. As the jury started to leave the box, plaintiff’s wife ran up to plaintiff’s attorney, speaking in a loud voice and calling for help, and also turned to the jury asking that somebody help her husband. The exact details of what occurred were shortly thereafter dictated into the minutes by the court, and no purpose will be served by repeating all of the details here. It is the court’s recollection that the jury remained in the courtroom for about two or three minutes between the time that the incident occurred and the time when they all finally departed into the robing room. They remained out of the courtroom for about a half or three quarters of an hour while emergency aid was given to the plaintiff. He thereafter left the courtroom under his own power and was assisted into an ambulance and taken to Kings County Hospital. After plaintiff had left, the jury returned and the trial resumed. In the meantime, and during the same recess, the City of New York had moved for a mistrial and its motion was denied for the reasons stated by the court upon the record. Both the plaintiff and the codefendant objected to the granting of a mistrial, but it must be borne in mind that the codefendant is also a coplaintiff in the action.
At the time that plaintiff collapsed, one of plaintiff’s physicians- was present in the courtroom prepared to testify in plaintiff’s behalf. He' witnessed the entire occurrence, and when he was later called to the stand, he testified that the collapse of the plaintiff was a manifestation of one of the injuries which plaintiff had sustained in this very accident. Other testimony, which was received during the trial both before the incident and thereafter, indicated that one of the end results of this accident and the injuries which plaintiff had sustained, was a brain condition which might very well have caused and in fact did cause the kind of spell which the jury witnessed.
Confronted with this medical evidence, the court took the position that what the jury witnessed was but an exhibition of the very injuries which they were being required to pass upon, and that under such circumstances, the defendant was not entitled to a mistrial. The court stated at that time that proper instructions would be given to the jury during the course of the charge, and in addition thereto, the jury was advised by the court during the course of the day, that since they had *821 seen plaintiff fall to the floor, they should also be made aware of the fact, and they were told, that plaintiff was able to leave the court on his own two feet.
The court is satisfied that the collapse of the plaintiff in the courtroom was not feigned but was spontaneous. The court is satisfied that the jury was not affected thereby to the prejudice of the defendant.
When the court charged the jury, specific mention was made of plaintiff’s collapse, and the jury was warned most explicitly that their sympathy was not to be excited in favor of the plaintiff by reason of this incident and that their verdict was only to be affected thereby insofar as they accepted the plaintiff’s medical proof that said incident was a manifestation of the injuries which plaintiff had sustained as a result of the accident itself. The jury was an intelligent one and it was evident to the court that they not only understood, but that they intended to and did follow the court’s instructions in this regard, and in the light of the authorities hereinafter cited, and the court’s own reaction to plaintiff’s collapse and the possible effect that it might have had upon the jury, the court is satisfied that no mistrial should have been granted.
Were it to be otherwise, then no plaintiff could ever be brought into court on a stretcher; no plaintiff could ever come in on a wheelchair, or on crutches after the loss of a leg. No one who had sustained horrible disfiguring scars on the body would be permitted to show them to a jury, even under proper instructions, and from the eyes of these supposedly experienced jurors, who had to decide important questions of fact and of finance, would have to be shielded all information and visual evidence, which someone might say might disturb their sense of balance. It has never thus been intended, and our courts have always, in a proper case, permitted jurors to see the actual result of injuries sustained as a result of an accident. There seems to be no reason why in this ease, a mistrial should have been granted because the jury witnessed a fit or seizure of the plaintiff, instead of seeing the plaintiff with both legs off, particularly where the medical proof was sufficient for the jury to determine as a factual question, whether this condition of the plaintiff, came about as a result of the accident.
No exception was taken to the court’s charge (except as to one part thereof which referred to the measure of damages) and no requests were made that additional instructions be given to the jury with respect to this incident. Accordingly, it must be deemed that the defendant accepted and was satisfied with the court’s instructions to the jury, and since the court *822 must assume that the jury properly followed the court’s instructions, there appears to be no reason why defendant should, be entitled to claim that it was prejudiced by this visual display of plaintiff’s injuries.
Several courts have heretofore passed upon similar questions.
In McGloin v. Metropolitan St. Ry. Co. (71 App. Div. 72) there was an incident similar to that which took place in the present trial.- In the McGloin case, after the adjournment of the court on the first day of the trial and in the presence of one or more of the jurors, the plaintiff became prostrated in the courtroom when he was attended by physicians. This attack lasted about 20 minutes when plaintiff was removed from the courtroom. There was no allegation or proof that this attack was simulated or that fraud or deception was practiced by the plaintiff. The court, in denying a new trial, stated (p. 73): “His condition was evidently brought on by the excitement attending the trial in his weak physical condition. There is evidence that his physical condition at the trial was caused by the injury occasioned by this accident. If this attach had happened during the session of the court, there being no suspicion of a simulated attach, bad faith or fraud, there would be nothing to justify this court on appeal in granting a new trial.” (Emphasis supplied.)
It is interesting to note that the trial court questioned the jurors whether any one of them would have his decision affected by the occurrence and none of them responded. While in this case the jurors were not questioned, they were advised that plaintiff had walked from the courtroom on his own two feet and they were further properly instructed during the court’s charge.
The McGloin case appears to be the only New York State case which is in point. The question has, however, been raised in other jurisdictions.
In Dickinson v. Davis (284 S. W. 815 [Mo.]) involving an epileptic plaintiff, the plaintiff was sitting on a chair reserved for spectators in view of the jurors. The court noticing that the plaintiff was about or appeared to be going into a fit, instructed the jury to leave the room and the jury room door was closed before there was any stroke, except that some of the jurymen turned their heads when the plaintiff emitted the peculiar sound which attracted the court’s attention. A motion was made to discharge the jury, which was overruled. The appellate court in handing down its opinion stated (pp. 820-821): “ We think that this was plainly an incident calling for *823 the exercise of the discretion of the trial court. He saw the occurrence and knew what effect it had on the jury, and we are not so favorably situated. There does not seem to be any question but that plaintiff is subject to fits of epilepsy, and, if the jury surmised that he was going to have a fit, they would not be informed of a condition from which the plaintiff was suffering that they did not already know and which is conceded to exist. While it is claimed that this incident appealed to the sympathies of the jury, there is nothing to show that the fit was brought on intentionally.” (Emphasis supplied.)
In Galveston, Harrisburg & San Antonio Ry. Co. v. Hitzfelder (24 Tex. Civ. App. 318) it appeared that the plaintiff had suffered personal injuries which caused frequent epileptic convulsions and other mental and physical disorders. He fell down in a violent epileptic convulsion while in the courtroom, which caused great excitement in the presence of the jury. The trial court denied a mistrial on the ground of misconduct of the plaintiff in the presence of the jury. It was held that there was no reversible error, the appellate court stating that it did not appear that the incident intensified the evidence to the effect that the plaintiff suffered from epilepsy or that the defendant was injured by the incident.
In Timmerman v. Frankel (172 Mo. App. 174) the court denied a motion for a new trial where the infant plaintiff, who was suffering from headaches and nervous attacks began to weep while testifying. The appellate court held (p. 185) : “Evidently the trial judge believed these outbursts of plaintiff were due to her nervousness and were spontaneous. We realize that his opportunity for judging of the true cause of the emotional display was superior to that we possess and adopt his conclusion that plaintiff was not actuated by an interested motive. She had the right to testify in her own behalf and if her nervous condition was such that she could not control herself, we would hold that her uncontrollable and, therefore, innocent exhibition of nervousness was a fact the jury was entitled to have before them as one of the relevant and material facts of the case. If her face had been disfigured, or if she had lost an arm, no one would contend that it would have been improper for her to appear as a witness and exhibit such injuries to the jury.” See, also, Nami v. Harmes (286 S. W. 558 [Tex.]), where it was held that in the absence of evidence tending to show that the illness in court was feigned, or that the jury were unduly affected thereby, no new trial should be granted where the plaintiff apparently became exhausted or fainted and was carried out of the court.
*824 In none of these cases cited did the court come to the conclusion that plaintiff’s condition excited sufficient sympathy so that the jury’s verdict was swayed thereby. In any event, if the picture presented to the jury showed that plaintiff was suffering from a serious and severe physical condition, this was due not to the incident which occurred in the courtroom, but as the jury has found, to the negligence of the City of New York. Under such circumstances, there seems to be no reason why plaintiff should be denied his rights to a trial.
Were this court to rule otherwise, there could be no guarantee that plaintiff would ever be able to have his trial. Assuming that a new trial was to be granted and that plaintiff upon such trial was in. the courtroom prepared to testify, just as he was in this instance; assuming further that at the time of such new trial he again suffered from a seizure and collapsed in the courtroom, should a mistrial again be granted? Was it necessary that plaintiff guarantee to defendant in advance of trial that never during the course of this seven or eight-day trial would his physical condition be such that he would collapse in the courtroom? Or did plaintiff have to guarantee in advance of any trial, that he would not be in the courtroom in order to testify, for him to secure his day in court? The questions obviously answer themselves and under all of the circumstances in this case the court has come to the conclusion that what the jury saw was no more than an exhibition of plaintiff’s injuries sustained as a result of the accident which was then being tried and that the jury had a right to see such injuries.
It has frequently been held that notwithstanding the danger of prejudicing a defendant in such cases, an exhibition of an injured part of the body is generally allowed where one of the questions in issue is as to the nature and extent of the injuries.
In Mulhado v. Brooklyn City R. R. Co. (30 N. Y. 370) the Court of Appeals, in rejecting the defendant’s contention that the plaintiff should not have been permitted to exhibit her injured arm to the jury, said (p. 372): “ As well might it be contended that a man who had lost an arm or a leg, by a similar injury, should not be permitted to appear before a jury to testify in relation to it, lest thereby their feelings might be influenced, and under undue excitement created thereby they might do injustice.” (See, also, Perry v. Metropolitan St. Ry. Co., 68 App. Div. 351.)
In Corpus Juris (Yol. 22, Evidence, p. 789) it is stated: ‘ ‘ Whether or not such an exhibition shall be allowed is a matter *825 resting largely in the discretion of the trial court, which will not be interfered with except in case of abuse.”
Where the incident before the jury is deliberately staged so as to permit plaintiff to take an unfair advantage of a defendant, the court in its discretion will generally grant a mistrial. But where as here, the incident is spontaneous, the situation is different than where other incidents which sometimes justify a mistrial occur at a trial. For instance, where a plaintiff’s attorney by his questions deliberately seeks to convey to the jury the information that the defendant is insured, a mistrial ivill generally be granted. (See Simpson v. Foundation Co., 201 N. Y. 479; Cosselmon v. Dunfee, 172 N. Y. 507.) On the other hand, if the fact of insurance inadvertently or accilentally comes to the attention of the jury, the court in its liscretion may deny a mistrial and give proper instructions ;o the jury. (See Simpson v. Foundation Co., supra; Rodzborski v. American Sugar Refining Co., 210 N. Y. 262.) Courts rave permitted inquiries as to insurance under proper circumstances, despite the claim of prejudice against the defendant. An investigator may be cross-examined to show that he is smployed by an insurance company (Wood v. New York State Elec. & Gas Corp., 257 App. Div. 172, affd. 281 N. Y. 797); a physician may be cross-examined to show that he was employed 3y an insurance company, even though the sole purpose of the question was to show that the defendant is insured (Di Tommaso v. Syracuse Univ., 172 App. Div. 34, affd. 218 N. Y. 640).
It thus appears that each case must be examined in the ight of its own peculiar circumstances and that the trial court, >efore whom the incident occurs must determine whether prejudice has resulted from the information or occurrence vhich has been exhibited to the jury.
Taking up now the second question presented, that is, vhether the verdicts are excessive, the court has come to the lonclusion that they are not. As to the verdict in favor of he plaintiff Vurgun for the sum of $7,000, the evidence before he jury was sufficient to justify that amount, particularly in dew of the failure of the defendant to in any way contradict plaintiff’s medical proof, although defendánt had been granted l physical examination by a doctor of its own choice. The rerdict in favor of the plaintiff Ismail in the amount of $165,000 s likewise justified by the evidence. It is apparent that the ury gave very careful consideration to the court’s instructions. Taintiff’s claimed special damages were about $2,500, and a addition thereto he claimed about $120,000 in lost wages and *826 prospective wages. However, following the rule laid down by the Appellate Division, Second Department, in Rudolph v. City of New York (1 A D 2d 962) (see record and briefs), the court charged the jury that if plaintiff was entitled to recover for his lost wages and future lost wages during his life expectancy, and if the jury accepted his claim that he was permanently disabled, that his recovery for such future wages was limited to the commuted value of his earnings based upon such life expectancy in accordance with the tables set forth in the Civil Practice Act. The jury was instructed that, in addition, they could give him the amount of his actual lost wages to the time of trial, which was in the amount of $6,416.65, or so much thereof as they believed he had lost. The commuted value of his wages during the balance of his life expectancy was $56,505.29. The total of all of his special damages, including such commuted value, was $65,403.94. The jury was instructed that it could allow the plaintiff special damages up to, but not in excess of that amount, and that it could award the plaintiff only as much of that amount as it felt was justified by the evidence. It is apparent from the jury’s verdict, that they accepted in full the plaintiff’s claim for special damages, and awarded him the sum of $65,000 therefor, and in addition, the sum of $100,000 for his pain, suffering and permanent disabilities. This court is unable to say that the transition of this 33-year-old man from his status as a normal healthy individual, married with two children, gainfully employed and living in the status of a family man with normal healthy activities, to the physical and mental wreck which was described at and exhibited during the trial, did not justify the amount of the jury’s award. If plaintiff is permanently crippled because of the brain damage which occurred as a result of this accident, and if he is suffering from the mental condition which was described upon the trial (and the jury by its verdict has accepted his claim that he is so disabled), the award may not be said to be excessive. In any event, it may not be said to be so excessive that the court would have a right to substitute its judgment for that of the collective judgment of the 12 jurors who unanimously agreed upon their verdict. The measure of an injured plaintiff’s damages or the value of anything in life is usually determined by the attitude and feelings of the one who must make the assessment. To the collector of valuable paintings a masterpiece may be worth many tens of thousands of dollars, while to the one for whom art has no attraction, the same painting would have little or no value.
*827 It is better that the collective judgment of 12 citizens of the community be used to measure the damages in a case such as this, than that of any one individual, and the court has come to the conclusion that this verdict should be permitted to stand, particularly since the court’s own estimate of the value of plaintiff’s injuries and special damages was substantially in agreement with that of the jury. In addition, the Appellate Division in this department has held that where a defendant makes no attempt to controvert the medical testimony submitted by the plaintiff, an assessment of damages made by a jury may not be deemed to be excessive. (McDermott v. City of New York, 7 A D 2d 745 [2d Dept.].) As to this plaintiff, just as was the case with the plaintiff Vurgun, the defendant failed to introduce any medical proof, even though it had had a physical examination by a physician of its own choice.
In Jones v. New York Cent. R. R. Co. (4 A D 2d 967) the Appellate Division, Second Department, sustained an award of $275,000 for the plaintiff who was permanently injured. In Delaney v. New York Cent. R. R. Co. (68 F. Supp. 70) and in Jones v. Atlantic Refining Co. (55 F. Supp. 17, 20) the courts indicated their reluctance to change jury verdicts. In White v. Coyle Wrecking & Lumber Corp. (279 App. Div. 822) the Appellate Division, Third Department, affirmed the judgment even though, as was stated in its memorandum opinion, it conceded ‘ ‘ that the amounts of damages awarded constituted high assessments,” and went on further to say, “but we cannot say, as to either cause of action, that the award was so unsupported by evidence as to be excessive. ’ ’
In Leombruno v. Julian (37 N. Y. S. 2d 618), the language of the Supreme Court, Warren County, is most significant. In rejecting a contention of the defendant that a verdict was excessive, the court said (pp. 620-621):
‘ ‘ The jury is the tribunal charged with the duty of determining the amount of damages which an injured party has sustained. The jury has seen and heard the parties and their witnesses; its verdict is the combined judgment of twelve persons of various callings and walks of life. Such a verdict is not to be lightly set aside.
“It is not determinative that the Court might have been better satisfied with a lesser verdict, or, alone, that the Court, in its own judgment, might have arrived at a verdict for a lesser sum, and such a persuasion in the mind of the Trial Court furnishes no sufficient reason for invading the province of a jury and substituting the opinion of the Court for that of *828 the jury. Reger v. Rochester Ry. Co., 2 App. Div. 5, 37 N. Y. S. 520; Hogan v. Franken, 221 App. Div. 164, 223 N. Y. S. 1.
“ ‘While the judgment of men might differ as to the compensation due plaintiff, this jury was selected by the parties to determine that question. In the absence of some sign of manifest injustice their judgment must control.’ Leversee v. Neidermyer, 219 App. Div 214, 219 N. Y. S. 591, 592. It was the duty of the jury to consider all of the evidence and to pass judgment upon it, and a portion of the duty it was required to perform was, having first of all determined that there was liability on the part of the defendant to the plaintiff, to determine how much should be paid by the defendant to the plaintiff by way of damages. This has been done in this case by a jury in the usual process of the administration of justice in our Courts.”
In Condon v. Nilsen (278 App. Div. 698) the Appellate Division in the Second Department held, in reinstating a verdict which was, in that case, claimed to be inadequate and had beer set aside by the Trial Justice as such: “ In view of the conflicting medical proof as to the nature and extent of plaintiff’s injuries, it was for the jury to determine the amount to be awarded plaintiff to compensate him for the injuries found to exist.”
In Fitzgerald v. New York Cent. R. R. Co. (215 App. Div. 1) the Appellate Division in the Fourth Department said (p. 2)
“ The power of the court to set aside verdicts as insufficienf or excessive is salutary, and if the verdict of the jury is unjus it is the duty of the trial court to exercise such power. Ai appellate court should not interfere with the exercise of discretion by the trial court in reducing a verdict unless it clearly appears that the authority vested in the trial court has beer erroneously exercised. At the same time the function of the jury must be kept constantly in mind. Jury verdicts shoulc stand unless evidently based upon or influenced by passion prejudice, partiality or corruption.
“ The record before us does not divulge good grounds fo] reducing the verdict. There is nothing indicating irregularity bias, unfairness or inadequate consideration of the testimony The jury’s conclusion as to the compensation due plaintiff shoulc stsincl. ^ ^
In Mullen v. Fayette (274 App. Div. 527, affd. 300 N. Y. 501) the Appellate Division, Third Department held that in assessing damages and in considering the amount of a verdict, the reducec purchasing power of the dollar must be taken into consideration (See, also, Rosen v. Sterling Symphony, 193 Misc. 12.)
*829 In Hogan v. Franken (221 App. Div. 164, 166-167) the Appellate Division, Third Department, said: ‘£ The fixing of unliquidated damages is primarily for the jury. The sole question here is as to the inference to be drawn from undisputed medical evidence as to the extent of injury, and the facts from which these inferences are to be drawn are contained in the record before us. It would seem that in such a case the discretion of the appellate court may be as freely exercised as that of the trial court. Moreover in such a case the mere fact that the trial or appellate court may think that the jury drew the wrong inference from such undisputed evidence in assessing the damages would not warrant the setting aside of the verdict as against the weight of the evidence in case the inference adopted by the jury was a fair and reasonable one. We think that this is a case where the difference between the trial justice and the jury is that of two reasonable minds arriving at different conclusions, where the facts are undisputed and reasonable minds could draw different inferences therefrom. Unless the judgment of the court is to be substituted for that of the jury upon this plain question of fact, the verdict of the jury should be permitted to stand.”
In 1944, Mr. Justice Froessel, then sitting as a Justice of the Supreme Court in Kings County, and now a Judge of the Court of Appeals, in Hutchinson v. City of New York (N. Y. L. J., July 31,1944, p. 197, col. 7) decided a motion then pending before him to set aside a jury’s verdict as excessive. Tie said: ££ Upon due deliberation I have concluded not to disturb the verdict. Whatever personal views the court may entertain upon the issue of liability, a question of fact was presented for determination by the jury and there is evidence here to support the verdict of the jury upon that issue. As to the issue of damages, it is well settled that the trial court should not usurp the functions of the jury in fixing the amount o'f\damages in a negligence case unless the verdict is capricious \>r the result of passion, prejudice or sympathy (Jordan v. Smyk, 262 App. Div., 414, reversed on another ground, 288 N. Y], 525; Abravanel and ano. v. Ohrbach’s, N. Y. L. J., June 26,1943, Trial Term, Part VI, Kangs, affirmed by the Appellate Division, Second Department, N. Y. L. J., May 16, 1944).”
The Abravanel case was later affirmed by the Court of Appeals (294 N. Y. 674). The Hutchinson case was reversed on other grounds (269 App. Div. 708).
In Fisher v. Grad (N. Y. L. J., Feb. 25, 1941, p. 853, col. 3), decided by Mr. Justice Eder of the Supreme Court, New York County, the court there properly set forth the theory which this court feels should be followed, stating:
*830 “ In considering the measure and amount of damages, where the law prescribes no legal rule of measurement it is well established that it is the province of the jury to determine the amount of the award to be made and this is particularly so in actions for personal injuries, and other personal torts. Thus it may be stated as a general proposition that if there is no rule of law regulating the assessment of damages and the amount does not depend on computation, the judgment of the jury and not the view of the court must control, and that in a personal injury action, the measure of damages is committed to the sound discretion of the jury first and then to the discretion of the trial judge upon a motion for a new trial. The reason for this rule is simply this, that since in this class of cases there is no scale by which the damages can be ascertained with certainty they admit of no other test than the intelligence of a jury governed by a sense of justice.
‘ ‘ Of the various formulae that have been allowed by the courts for determining the question whether a verdict is excessive, the following by Chancellor Kent, in Coleman v. Southwick (9 Johns., 45, 52; 6 Amer. Dec., 253, a libel action) has been frequently quoted or paraphrased with approval: ‘ The damages, therefore, must be so excessive as to strike mankind, at first blush, as being, beyond all measure, unreasonable and outrageous, and such as manifestly show the jury to have been actuated by passion, partiality, prejudice or corruption. In short, the damages must be flagrantly outrageous and extravagant, or the court cannot undertake to draw the line; for they have no standard by which to ascertain the excess. ’ ’ ’
Since the court has come to the conclusion that this verdict was not the result of passion or prejudice, and that the amount thereof is consistent with the court’s assessment of plaintiff’s damages, and under all of the circumstances in this case, the motions to set aside the verdict in favor of each plaintiff are in all respects denied. All motions upon which decision may have been reserved are decided adversely to the defendant the City of New York. Exception is granted to the city as to all of these adverse decisions. The motion for a mistrial has been again considered and it is again denied with an exception to the city.
Thirty days ’ stay and 60 days to make a case is granted.