Emilio Nunez, J.
An American Airlines’ 707 jet crashed on March 1, 1962, killing all aboard. This wrongful death action, together with several others, ivas tried on the separate issue of liability resulting in a verdict in favor of the plaintiffs on that issue. The only issue tried to a jury before me was the issue of damages.
Richard Storey and Lois Storey, his wife, were two of the many passengers killed in the accident above referred to. They left four children surviving them: Gwyn, 7 years; Sheryl, 5 years; Karen, 2% years; and Gail, 7 months. Karen, concededly, is suffering from Down’s Syndrome (Mongolism). This condition is permanent.
The father was 29 years old at the time of his death. He married Lois Slavich on April 25, 1954. At the time of his death, Richard was vice-president, 40% owner, and the chief executive officer of John Slavich, Inc., a corporation engaged in the fresh fruit and vegetable business in New York and California. The evidence shows that Richard had gone into this business with his father-in-law who died in 1958. Upon his father-in-law’s death, his mother-in-law gave him a 40% interest in the business and Richard took full command thereof. His income from this business increased materially as time passed, and the year preceding his death he received $14,900. Leading and responsible businessmen in the fruit industry in New York testified that Richard was recognized in the industry as an able, personable, aggressive young man with a very bright future ahead of him. He was considered a leader among his associates. His business was expanding. The evidence established that his earnings would increase materially and the jury was justified in finding that his income would be in excess of $25,000 per year within a short time. He was in excellent health. The United States Department of Health, Education and Welfare life tables give him a life expectancy of approximately 41 years. Richard lived with his wife and four children in a single-family dwelling in Bakersfield, California; although heavily mortgaged, the house was owned by the Storeys.
*586 Lois was 28 years old at the time of her death. She was graduated from local grammar and high school, and had gone through an advanced school of merchandising in New York. At the time of her marriage, she was employed at Macy’s Department Store in the Personnel Department. She did not work after the birth of her first child. She was in excellent health. She cared for her home and children and performed the usual duties of a housewife and mother. According to the same life tables, she had a life expectancy of about 48 years. The evidence established that both Richard and Lois Storey gave valuable parental care, guidance, training and education to their four children. The evidence justifies a finding by the jury which they undoubtedly made, that the excellent parental care, guidance and training which was given in the past would be continued during the minority of the three normal girls and until the death of Karen, the Mongoloid child, who, incidentally, according to uncontradicted expert medical testimony, had a life expectancy of approximately 38 years from the death of her parents.
This action has been brought by the executors of Richard and Lois Storey to recover damages for a wrongful death for the benefit of decedent’s four children. The jury awarded the sum of $555,000 for the death of the father and $200,000 for the mother’s death. Defendant seeks to set aside both verdicts upon the ground that they are excessive.
A long time ago, Chancellor Kent, considering the power and propriety of either the Trial Judge or the appellate courts to interfere with awards made by juries in personal injury cases, stated the rule as follows in Coleman v. Southwick (9 Johns. 45, 52): ‘ ‘ The damages, therefore, must be so excessive as to strike mankind, at first blush, as being, beyond all measure, unreasonable and outrageous, and such as manifestly show the jury to have been actuated by passion, partiality, prejudice, or corruption.”
Chancellor Kent and his text quoted above have often been cited, paraphrased, and relied upon by Trial Judges (see Ismail v. City of New York, 18 Misc 2d 823; Atkins v. New York State Elec. & Gas Corp., 36 Misc 2d 12; Lucivero v. Long Is. R. R. Co., 22 Misc 2d 674).
My attention has not been called to any recent reference by any appellate court to Chancellor Kent’s rule, but it is generally agreed, as stated in Robison v. Lockridge (230 App. Div. 389, 390, 391) that: “No two eases of injury are exactly alike. Such damages are of such a nature that it is peculiarly fitting that they should be determined and fixed by a jury. * * * The court would have no right to substitute its judgment for *587 that of the trier of the facts. (Hogan v. Franken, 221 App. Div. 164; Dashnau v. City of Oswego, 204 App. Div. 189, appeal dismissed 236 N. Y. 542.) ”
It seems that although the Judge tells the jury that they are the sole judges of the facts and that in personal injury cases the damages are of such a nature that there is no scientific method of measuring them and that it is peculiarly within their province to fix them in a reasonable and adequate amount, the practice of interfering with verdicts by the courts is becoming more and more prevalent. Except in cases where the verdict is clearly excessive, inadequate or against the evidence, I strongly feel that we, the Judges, have no right to substitute our judgment for that of the jury. In so doing we are depriving the parties of a basic right — trial of all issues, including quantum of damages, by a jury (N. Y. Const., art. I, § 2). In referring to this practice, Mr. Justice Hofstadter, one of my distinguished colleagues, and Theodore-B. Richter, Esq., member of the New York Bar, in a recent article (N. Y. L. J., Feb. 4, 1963, p. 4, col. 3) said: “ It suffices for present purposes that, by and large, the fixing of unliquidated damages requires the application of common sense rather than specialized knowledge to the given facts. The merits of trial by jury in civil actions are beside the point. So long as the law gives the litigant the right to trial by jury and he chooses to avail himself of it he is entitled to the composite judgment of the jury, in theory, representative of a cross-section of the community. Of course, the verdict in respect of damages is not and should not be immune from judicial review; yet, for the reasons stated, we earnestly believe that the circumstances in which the award is altered should be rare.”
Expert testimony was received at the trial to show the cost of caring for Karen and her life expectancy. The expert testimony was given by a leading authority in the field of Mongolism in the United States. It was uncontradicted. The jury was advised that this testimony was merely advisory in nature and was not binding upon the jurors. They could take it or leave it. Expert testimony was also given by an expert, also outstanding in his field, to show the money value of the services rendered by a mother and what it would cost to procure a substitute mother. Here again the jury was carefully instructed that such testimony was merely given for its guidance; that it was not binding upon them but that if it appealed to them, that they were to consider it and to give it whatever weight they thought it deserved, if any.
*588 The jury was told by me that we are all familiar, in a general way, with what a mother does for her children, with what a father does for his children, and that the expert testimony was merely offered as a possible guide or help to the jury in determining the money value of the mother.
There are many cases in the law reports touching upon the value of parental care and guidance and the pecuniary loss thereof suffered by infant children for the death of one parent. Eesearch by plaintiff’s counsel has failed to disclose any New York case determining the question of how much such parental care and guidance and loss is increased where the other parent is also killed in the same accident. Plaintiff argues that the loss is much greater when both parents are struck down than in cases where one of the parents remains. The infant’s homes are continued, the family continues' to function as a unit and, therefore, the surviving parent provides partially for the parental care and guidance and education of the children. Plaintiff’s counsel would have the court consider this issue analogous to a situation where a man with one eye suffers the loss of his other eye due to someone’s negligence. What would the proper measure of damages be? Plaintiff contends that the court should not determine what the damages should be for the loss of one eye and multiply that figure by two because, obviously, the damages sustained by the loss of the second eye are much greater than twice the value of the loss of one eye. Undoubtedly, the jury in arriving at the amount of damages awarded for the death of each parent, properly, in my opinion, took into consideration the fact that there would be no surviving parent to care for the children and to provide them with what we all know both parents or at least one of them would have provided had they lived.
The court has carefully examined defendant’s memoranda, pointing out claimed errors in the reception of evidence, and find them without merit.
As we all know, there is no mathematical formula for computing damages in a death case, and the inquiry of the jury in this field necessarily requires some duty of speculation (Walther v. News Syndicate Co., 276 App. Div. 169). Our courts have increasingly recognized the greater value of human life (Rothman v. Rosenberg, 4 N Y 2d 969).
The jury was entitled to consider the father’s working habits, the amount contributed by him for the support of his family, his present position, and his potential advancement in life, and increased earning capacity, and the loss to the children of the guidance> advice, care and education of the parents. The jury *589 was also entitled to consider the constant erosion in the value of the dollar and the present and ever upward spiraling cost of living (Neddo v. State of New York, 194 Misc. 379, affd. 275 App. Div. 492, affd. 300 N. Y. 533; Countryman v. Fonda, Johnstown & Gloversville R. R. Co., 166 N. Y. 201).
I feel that the jury had before it all the relevant evidence required to make an intelligent evaluation of the pecuniary loss to the four surviving children of Richard and Lois Storey. Under our system, it is the jury’s function to discharge the solemn responsibility of fixing the amount. While the verdicts are generous, I cannot say that they are excessive as a matter of law.
For all of the foregoing reasons, the motion to set the verdict aside is in all respects denied.